[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-10997
Non-Argument Calendar

_____

D. C. Docket No. 05-00101-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN HOANG CAO,

Defendant-Appellant.

_____

No. 06-11101
Non-Argument Calendar

_____

D. C. Docket No. 05-00099-CR-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN HOANG CAO,
a.k.a. John Cao,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

**(March 13, 2007)**

Before CARNES, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

In these consolidated appeals, John Hoang Cao challenges his 480-month sentence for conspiracy to possess with intent to distribute methylenedioxymethamphetamine ("MDMA") and cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(C), and a concurrent 240-month sentence for conspiracy to money launder in violation of 18 U.S.C. § 1956(a)(1)(A), (B)(1). After thorough review of the record and careful consideration of the parties' briefs, we affirm.

I.

On appeal, Cao asserts the district court erred in calculating his offense level under the Sentencing Guidelines by (1) imposing a four-level enhancement for Cao's leadership role in the drug conspiracy, pursuant to U.S.S.G. § 3B1.1(a); (2) assessing a 2-level enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1); and (3) relying on hearsay testimony in determining the drug quantity

for which Cao was held accountable under U.S.S.G. § 2D1.1(a).[1]  Cao also argues

that his sentence was unreasonable under United States v. Booker, 543 U.S. 220

(2005).

A district court's sentencing determinations of whether a defendant

qualifies for a minor-role adjustment and whether a defendant possessed a firearm

are findings of fact that we review for clear error.  United States v. De Varon, 175

F.3d 930, 934 (11th Cir.) (en banc) (minor-role adjustment), cert. denied, 528 U.S.

976 (1999); United States v. Alred, 144 F.3d 1405, 1420 (11th Cir. 1998)

---

[1]We find no clear error in the district court's denial of Cao's request for a reduction to his offense level for acceptance of responsibility.  Cf. United States v. Calhoon, 97 F.3d 518, 531 (11th Cir. 1996) (reviewing denial of acceptance-of-responsibility reduction for clear error).  Cao denied his leadership role, his knowledge of the firearms, and the quantity of drugs involved in the offense. Indeed, in overruling Cao's request, the district court found that Cao had not accepted responsibility and, in fact, had "denie[d] and contest[ed] everything."  Cao's denials concerned conduct relevant to his drug trafficking, and therefore, his denials were inconsistent with an acceptance of responsibility. See United States v. Hernandez, 160 F.3d 661, 668 (11th Cir. 1998) (noting that "a sentencing court may deny the two point reduction when the defendant denies relevant conduct which the court finds to be true, because that denial is 'inconsistent with the acceptance of responsibility" (quotation omitted)).  On this record, the district court did not clearly err by finding that Cao had not carried his burden to demonstrate he was entitled to a reduction for acceptance of responsibility.

We also affirm the district court's denial of Cao's motion to depose co-conspirator Hai Nguyen, who, at the time of Cao's sentencing, was awaiting sentencing in Louisiana on charges arising out of the same conspiracy and who asserted his Fifth Amendment privilege against self-incrimination in connection with testifying at Nguyen's sentencing proceedings. See United States v. Kuku, 129 F.3d 1435, 1438 (11th Cir. 1997) (holding that co-conspirator who had entered guilty plea but had not yet been sentenced could properly invoke his Fifth Amendment privilege against self-incrimination at defendant's trial due to "possible impact that compelled testimony may have on the [co-conspirator's] as yet undetermined sentence.").  On this record, the district court did not abuse its discretion in denying Cao's deposition request.  We likewise discern no abuse of discretion in the district court's refusal to compel co-conspirator Nguyen's attorney, who asserted the attorney-client privilege, to testify regarding Nguyen's alleged recantation of his post-arrest statements.

(possession of a firearm). We likewise review a district court's determination of the quantity of drugs attributable to a defendant for clear error. See United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998). We review the ultimate sentence imposed for reasonableness, in the context of the factors outlined in 18 U.S.C. § 3553(a).[2] United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005).

According to the presentence investigation report ("PSI"), which the district court adopted, and the testimony presented at Cao's sentencing hearing, the facts relevant to Cao's sentencing arguments are these. Cao was arrested as part of an international drug trafficking conspiracy that was under Vietnamese leadership and stretched across several continents. The primary purpose of the international drug conspiracy involved laundering profits from MDMA sales. To that end, the conspiracy consisted of local cells in various parts of the United States, including Louisiana, Texas, Mississippi, and Florida.

---

[2]These factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed [treatment]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range. . .;(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

4

Cao was responsible for establishing a cell in Pensacola, Florida and providing the Pensacola cell with both cocaine and MDMA. Cao received MDMA shipments from a source in Houston, Texas. Cao located storage for these shipments and coordinated distribution of the narcotics to various individuals who would sell it in Northern Florida. The PSI reported that Cao, as one of three main suppliers of MDMA and cocaine within the Pensacola-based cell, consistently was in contact with senior members of the larger conspiracy in Texas and California. A cooperating individual ("CI") stated that, from November 2004 to January 2005, Cao had a stash house in Louisiana, where Cao stored at least 120,000 pills of MDMA and at least 12 kilograms of cocaine.

During this time, Cao supplied cocaine and MDMA to co-conspirator Peter Hoang, who was one of two "key leaders" or "first level distributors" in the Pensacola-based cell, and Title III wiretaps documented 20 or more conversations between Hoang and Cao regarding drug distribution and laundering of the proceeds. The PSI additionally described distributions from the first-level distributors to "second or mid-level distributors" of large amounts of MDMA supplied by Cao. Another co-conspirator, Huy Tran, who the PSI classified as a "courier or mule," acted as the go-between for the money transfers between Cao

5

and Hoang. Tran also made deliveries of drugs and picked up payments on behalf of Cao.

Cao was arrested on a highway in Mississippi in February 2005 and found to be in possession of 5,000 pills of MDMA, which formed a part of the instant charges. On September 22, 2005, he was indicted for conspiracy to distribute and possess with intent to distribute MDMA and cocaine in violation of 21 U.S.C. § 846. As part of his plea agreement to this charge, Cao waived his right to an indictment and agreed to plead guilty to a separate criminal information, which charged him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The plea agreement stated that Cao did not contest that the overall conspiracy in the Northern District of Florida involved in excess of 70,000 pills of MDMA and in excess of 5 kilograms of cocaine, excluding any amounts involved in the broader international conspiracy.

The PSI assigned a base offense level of 36,[3] pursuant to U.S.S.G. § 2D1.1, with the following adjustments: a 2-level upward adjustment for possession of a firearm, pursuant to § 2D1.1(b)(1); and a 4-level upward adjustment for being an

---

[3] Cao was held responsible for 132,000 MDMA pills based upon the following information: (1) 56,000 MDMA pills seized from a CI, who stated that Cao had stored 120,000 pills at a "specific residence in New Orleans;" (2) 7,000 pills that Cao had supplied to "CI#4"; and (3) Cao's possession of 5,000 MDMA pills when he was arrested in Boloxi, Mississippi. Cao also was held accountable for 12.5 kilograms of cocaine that had been stored at a stash house.

organizer or leader, pursuant to § 3B1.1(a). With an adjusted offense level of 42 and a criminal history category I, Cao's advisory Guidelines range was 360 months to life imprisonment. Before the sentencing hearing, Cao objected to the PSI's failure to award an adjustment for acceptance of responsibility, as well as the PSI's assessment of the role and firearm enhancements and calculation of the amount of drugs attributable to Cao.

At the sentencing hearing, Special Agent Todd Prince of the DEA testified that sometime late in 2004, he had taken part in an ongoing Title III surveillance of co-conspirator Hai Nguyen's residence, which was located at 152 Kim Drive in New Orleans, Louisiana and was believed to be one of Cao's stash houses. On January 29, 2005, Prince was contacted by local law enforcement concerning a controlled buy of MDMA that had originated from the Kim Drive residence. Task Force Officer George Breedy, of the St. Charles Parish Sheriff's Department, who also testified at the sentencing hearing, subsequently performed a consent search of the residence, which resulted in the discovery of 56,000 MDMA pills, 4 weapons, some cash, a money counter, a money box, and envelopes, which indicated to Breedy an expectation of a high volume of currency coming through the house.

In a post-arrest statement made to Special Agent Prince, Hai Nguyen said that the pills were part of a shipment of 60,000 pills Cao had delivered from

Houston. Cao had taken some of the shipment and left the rest with Nguyen. Nguyen estimated that Cao, between October 31, 2004 and January 2005, had made deliveries in amounts not less than 10,000 MDMA pills and 2 to 3 kilograms of cocaine, every week or every other week to the Kim Drive residence. In all, Nguyen estimated Cao delivered at least 160,000 MDMA pills and 12 to 16 kilograms of cocaine to the Kim Drive residence during this time period.[4] On the day following Nguyen's arrest, Special Agent Prince learned of Cao's arrest in Biloxi, Mississippi and that Cao was driving a Toyota 4Runner and found to be in possession of 5,000 MDMA pills, after previously having been at the Kim Drive residence the day of the search.

The government also presented the testimony of some of Cao's co-conspirators. Peter Hoang, a "first-level distributor," testified that Cao or Tran (Cao's "mule") had delivered to him two kilograms of cocaine to sell on two different occasions. After Cao was arrested in Mississippi in September 2005, Cao told Hoang that his "boy" (Tran) would continue to supply Hoang with drugs. Tran subsequently supplied Hoang with 2,000 MDMA pills on one occasion, and

---

[4]Officer Breedy testified about Nguyen's post-arrest statements, and Breedy's testimony was consistent with Special Agent Prince's description of those statements. Moreover, Officer Breedy noted that when Nguyen made the statements, they were made against his own interest, because he had not been given immunity.

1,000 pills on another occasion. Hoang testified that after Tran was arrested, he contacted Cao again, this time to find another supplier. At that time, Cao supplied Hoang with another 3,000 pills.

Special Agent John Johnson of the DEA also testified about Cao's leadership activities within the Pensacola-based cell, as well as Cao's arrest in Biloxi, Mississippi. Special Agent Johnson described Title III intercepted telephone calls during which Cao, after Tran was arrested, arranged for an attorney to represent Tran. Other intercepts revealed that Cao referred to Tran as "my boy," or one of his soldiers. A "soldier," as used by Cao in the conversation, referred to people who did the things that Cao wanted them to do, and in addition to Tran, there were two other unidentified people whom Cao referred to as "soldiers" and who acted at Cao's direction. Special Agent Johnson also testified that Cao had directed co-conspirator Peter Hoang to investigate the purchase of a shrimp boat and a restaurant, both of which Cao planned to purchase with drug proceeds in order to appear to produce legitimate income. In addition to Hoang, Tran, and the other two unidentified soldiers, Special Agent Johnson stated that in the course of the DEA's investigation, Cao had exercised leadership over co-conspirators Chhon Iv, Jeffrey Wessel, and Hai Nguyen, as well as three unidentified individuals.

Chhon Iv testified at the sentencing hearing that Cao fronted him MDMA pills to sell. During the relevant time period, Cao fronted Iv pills in increasingly larger amounts, beginning with two 300-pill fronts, then two 600-pill fronts, then two 1,000-pill fronts, and finally two 2,000-pill fronts. After Iv sold the fronted pills, Cao would contact him and set the time and place to pick up the money from the fronted drug sales. Iv testified that after Cao was arrested, Cao contacted him regarding money Iv owed for previously fronted pills. Cao threatened that his people from Texas would come "shoot down" Iv's house if Iv did not come up with the money.

After hearing the foregoing testimony, the district court overruled Cao's objections to the PSI and his objection to the leadership-role enhancement. The district court also denied Cao's request for an acceptance-of-responsibility reduction, finding that Cao had not accepted responsibility and, in fact, had "denie[d] and contest[ed] everything." The court then heard argument in support of mitigation. Cao argued that he was a first time, non-violent offender who did not carry a gun or cause injury to anyone. He further contended that he had cooperated with law enforcement, and truthfully provided the government with information regarding his offense. Cao again challenged the drug quantity attributed to him based on co-conspirator Nguyen's previous statements. Cao

10

noted that he has four children for whom he provides support and urged the court to impose a lenient sentence so as to provide Cao with the opportunity to be a productive member of society. The district court also heard Cao's statement of remorse.

The court adopted the findings of the PSI and sentenced Cao to 480 months' imprisonment as to the drug case and 240 months' imprisonment as to the money laundering case, with the sentences to run concurrently, and a 60-month term of supervised release. The court stated that it had considered the § 3553(a) factors and the advisory Guidelines range. The court found the sentence imposed was reasonable considering Cao's conduct and was sufficient to meet the goals of punishment deterrence of similar conduct. This appeal followed.

## II.

First, Cao argues on appeal that the district court erred by enhancing his offense level based on a finding that he was an organizer or a leader of the conspiracy. Section 3B1.1(a) states that, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). The factors that a court should consider in making this determination include:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of

accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). In order for § 3B1.1 to apply, the government must demonstrate that the defendant exercised some authority, degree of control, influence, or leadership. United States v. Gupta, 463 F.3d 1182, 1197-98 (11th Cir. 2006).

The government presented ample evidence of Cao's leadership position in the conspiracy. After establishing the Pensacola-based cell, Cao was one of the cell's two "first-level distributors" who received the MDMA and cocaine in Texas, and arranged for its delivery to storage places and ultimately for its sale in Northern Florida. In addition to his involvement in all facets of the distribution and sale of the narcotics, he regularly asserted influence over other individuals who were lower in the distribution chain and recruited dealers into the organization. Moreover, based on the extensive testimony concerning the scope of the conspiracy, from both law enforcement and co-conspirators, we readily conclude that the criminal activity involved five or more participants or was otherwise extensive, as § 3B1.1 requires for a 4-level enhancement. In short, we readily conclude the district court did not clearly err by assessing a role enhancement.

Second, we are unpersuaded by Cao's argument concerning the firearm enhancement, which was assessed based on firearms possessed by co-conspirators to whom Cao distributed drugs. Cao suggests that the co-conspirators' possession of guns was not reasonably foreseeable to him.

Under § 2D1.1(b)(1), a two-level enhancement is warranted if a dangerous weapon, including a firearm, was possessed. U.S.S.G. § 2D1.1(b)(1). This enhancement applies if a weapon was present "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). "Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). We have stated that, in order for the § 2D1.1(b)(1) firearm enhancement to be applied based on a co-conspirator's gun possession, the government must show the following by a preponderance of the evidence: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Gallo, 195 F.3d at 1284.

13

Here, one of the firearms attributed to Cao was possessed by co-conspirator Paul Hoang. In an appeal by one of Cao's co-conspirators, Mike Pham, we recently upheld imposition of the firearm sentencing enhancement based on Hoang's possession of the firearm, based on Pham's membership in the conspiracy at the time of Hoang's possession, and some of the Title III phone interceptions during which Hoang discussed using a firearm in connection with settling business. See United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006). As to the reasonable foreseeability requirement, we found that it was met given the lucrative and illegal nature of the drugs involves, the common knowledge that guns are tools of the drug trade, the large amounts of drugs and money, and the vastness of the conspiracy. Id. at 1246. (citing United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir.1986)).

In the instant case, as in Pham, the four Gallo requirements are satisfied. Hoang and Cao were co-conspirators at the same time that Hoang possessed the gun. The use of guns was reasonably foreseeable because of the nature of the drug conspiracy in which Cao was involved. See Pham 436 at 1246.[5] Accordingly, the

_____

[5] In addition to Hoang's firarm, the government also presented evidence of four guns that were discovered at Nguyen's home on Kim Drive, which served as Cao's Louisiana "stash house." Nguyen's possession of these firearms also would support application of the § 2D1.1(b)(1) enhancement, pursuant to Pham.

district court did not clearly err by assessing the firearm enhancement to Cao's offense level.

Third, Cao argues that the district court impermissibly relied on hearsay to determine the drug quantity. He asserts that the testimony about Nguyen's post-arrest statements to law enforcement did not have sufficient indicia of reliability, as the district court did not make a finding regarding the co-conspirator's reliability before relying on the evidence. Accordingly, he suggests the drug quantity was not supported by sufficient evidence. We disagree.

We review the drug quantity attributable to a defendant found by the district court for clear error. United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998). "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." Id. at 1359. "In estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996). Additionally, "the court could consider any information, including reliable hearsay . . . so long as the defendant has 'the opportunity to rebut the evidence or generally to cast doubt upon its reliability.'"

United States v. Query, 928 F.2d 383, 385 (11th Cir. 1991) (quoting United States v. Castellanos, 904 F.2d 1490, 1496 (11th Cir.1990)).

Cao primarily relies on our decision in United States v. Lee, 68 F.3d 1267, 1275 (11th Cir. 1995), in which we vacated a district court's determination of drug quantity where the court had relied on only a law enforcement officer's testimony about post-arrest hearsay statements made by a co-defendant, which were against the co-defendant's penal interest. We expressly tempered our holding in Lee, however, when we noted that the co-defendant's statements "failed to qualify as a 'sufficient indicia of reliability,' particularly in view of [the codefendant's] status as a fugitive from justice." Id. (emphasis added).

We also distinguished Lee in United States v. Gordon, 231 F.3d 750 (11th Cir. 2000), where we highlighted that Lee involved "facts that powerfully undermined the reliability of the statement, including the co-conspirator's status as a fugitive from justice." Id. at 760. In Gordon, we held that where there was materially consistent evidence from other sources, to be considered along with the hearsay, the other evidence could support a finding of reliability. Id. at 761. Because Nguyen was not a fugitive from justice and the government presented materially consistent evidence from other sources, we cannot say the district court clearly erred in its calculation of the drug quantity attributable to Cao.

16

Finally, Cao argues that his sentence, which was within the advisory Guidelines range, was unreasonable. From our review of the sentencing proceedings, it is clear that the district court correctly calculated the advisory range, heard Cao's mitigating arguments and statement of remorse in support of a lower sentence, and expressly indicated it had considered the § 3553(a) factors, including Cao's criminal conduct and the sentencing goals of punishment and deterrence of similar conduct. Simply put, Cao has not met his burden to show that the sentence was unreasonable.

**AFFIRMED.**