UNITED STATES of America,
Plaintiff–Appellee,

v.

Lorenzo LEE, a/k/a Ponytail; Terrance
Lanea Hires, Defendants–
Appellants.

No. 93–7044.

United States Court of Appeals,
Eleventh Circuit.

Nov. 9, 1995.

Cindy W. Powell, Mobile, AL, for Lorenzo Lee.

Winn Faulk, Mobile, AL, for Terrance Lanea Hires.

Gloria A. Bedwell, Asst. U.S. Atty., Mobile, AL, for the U.S.

Before KRAVITCH, Circuit Judge, and GODBOLD and MORGAN, Senior Circuit Judges.

MORGAN, Senior Circuit Judge.

Lorenzo Lee and Terrance Lanea Hires appeal their sentences for conspiracy to possess crack cocaine with intent to distribute in violation of 21 U.S.C. § 846 and for possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Hires also appeals his convictions. Based upon the reasons set forth below, we affirm Hires' conviction, but we vacate both appellants' sentences and remand to the district court.

FACTUAL BACKGROUND

On two occasions in March of 1993, Officer John Molyneaux, a narcotics agent for the Mobile, Alabama, Police Department, received a phone call from an unknown informant who apprised him of suspected drug activity.[1] In addition to the phone conversations, Molyneaux also met with the informant on one occasion to obtain more detail. Specifically, the informant provided Molyneaux with information regarding a person from Miami, Florida, known as Ponytail who allegedly had been carrying cocaine to the Mobile area for delivery to local distributors. This information included a personal description of Ponytail; the fact that he was staying at the Econo Lodge at I–65 and Dauphin Street; that he was driving a blue Mitsubishi sports car bearing a specific license tag; that the car was parked in a particular location; and that he was traveling with a woman and young child. According to the informant, it was Ponytail's usual business practice to meet with local distributors at his hotel and drive their vehicles in order to avoid suspicion which may be caused by the Dade County plates on Ponytail's car.

With this information in hand, Molyneaux proceeded to the Econo Lodge in Mobile on March 11, 1993, to corroborate the informant's tip. Upon his arrival, he found a car matching the informant's description. Later, Molyneaux noticed appellant Lee exiting this vehicle. Lee exhibited all the characteristics provided by the informant, such as wearing a ponytail and travelling with a woman and child. Thereafter, Molyneaux and two other Mobile police officers, Sergeant Prentiss Lawson and Lieutenant Steve Arthur, noticed a red Honda Prelude enter the hotel's parking lot. The car was driven by appellant Hires who was accompanied by Lorenzo Cox. When the car arrived, Lee left his hotel room with a brown paper bag. Lee entered the back seat of the Honda, and the car pulled away. At that moment, Molyneaux decided to stop the Honda.

Once Molyneaux and his fellow officers stopped the car, they ordered the occupants out. In plain view on the rear floorboard of the vehicle, they saw wrapped in plastic crack cocaine in cookie forms. Sergeant Lawson then frisked Hires. Upon doing so, he found a bulge in Hires' front pocket. Purportedly out of fear that a weapon could be concealed in the pocket, Lawson looked in Hires' pocket and found a wad of cash and another crack cocaine cookie. The officers continued by searching Lee's hotel room after obtaining the permission to do so from

---

1. The informant was later identified as Ed Dixon, a crack user who was familiar with Mobile's drug trade and who allegedly had previous drug dealings with appellant Lee.

Lee's girlfriend.[2] While the search revealed no more drugs, the officers retrieved almost $3,000 in cash and some handwritten notes appearing to be records of drug transactions.

Lee, Hires, and Cox were tried in federal district court for possession of crack cocaine with intent to distribute and for conspiracy. The government's theory was that Hires and Cox were involved in a drug conspiracy led by Lee to distribute crack cocaine in the Mobile area. In contrast, the defendants' theory at trial was that Hires and Cox picked Lee up at the hotel to help him find transportation for a new, legitimate business he was planning to start in Mobile and that the three were not involved in any drug conspiracy. Lee and Cox testified that they did not own and were not aware of the drugs found in the Honda. Hires did not testify. Hires, however, did make a request to admit jail records which showed that he had less than one dollar when he was arrested or to subpoena witnesses with additional information on this issue. Admission of this evidence would have disputed the testimony of one of the arresting officers, who had testified that he found a large sum of money in Hires' pocket. The district court refused this request. The district court also rejected Hires' request that the jury be instructed on the lesser included offense of mere possession. The jury convicted both Lee and Hires, but acquitted Cox.

At the sentencing stage of the trial, the district court, utilizing the federal Sentencing Guidelines, sentenced Lee to life on the conspiracy charge and a concurrent forty years for possession with the intent to distribute. At the time of Hires' sentencing, Lee recanted his testimony given at trial and claimed that Hires had nothing to do with the drug conspiracy. Based upon Lee's recantation, Hires moved for a new trial. The district court denied the motion, however, and subsequently sentenced Hires to jail for 235 months on both the conspiracy and intent to distribute charges.

Hires appeals his conviction and, in the process raises four specific issues. First, he contends that the evidence seized from the car should have been deemed inadmissible as the officers did not have a sufficient legal basis to conduct an investigatory stop of the Honda. Second, Hires argues that the district court erred by refusing to issue subpoenas for witnesses to authenticate documents regarding the amount of cash he had in his possession at the time of the arrest. Third, Hires maintains that the district court should have instructed the jury on the lesser included offense of possession. Finally, Hires claims that he should have received a new trial based upon Lee's recantation of his trial testimony. Both Lee and Hires also appeal their sentencing by arguing that the district court's findings of fact were clearly erroneous. We consider each of these issues separately below.

## DISCUSSION

### A. Investigatory Stop of the Car

■■■ Hires first argues that Molyneaux and his fellow officers did not have a sufficient legal basis to stop and search the Honda on March 11, 1993. He raised this issue before the district court by way of a motion to suppress the evidence seized in the search, which the district court denied. Rulings on motions to suppress involve mixed questions of fact and law. Thus, we evaluate the district court's factual findings for clear error and evaluate its legal conclusions *de novo*. *United States v. Hromada*, 49 F.3d 685, 688 (11th Cir.1995); *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir.1994). Furthermore, we construe all facts in a light most favorable to the government as it was the party prevailing in the district court. *Hromada*, 49 F.3d at 686.

■■■ It is acceptable under the Fourth Amendment for the police to stop persons and detain them briefly in order to investigate a reasonable suspicion that the persons have engaged or are about to engage in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The *Terry* rationale also applies to allow the police to conduct an investigatory stop of a car. *United States v. Sharpe*, 470 U.S. 675, 682,

---

**2.** The woman who travelled with Lee to Mobile, Deborah Mills, consented to the search of the room, but did not give the officers permission to search their suitcases.

105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *United States v. Williams,* 876 F.2d 1521, 1524 (11th Cir.1989). The key, however, is "reasonable suspicion" on the part of the police officer. "Reasonable suspicion" is more than just a hunch because the Fourth Amendment requires at a minimum some objective justification for the investigatory stop. *United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989). The validity of the stop must be considered in view of the totality of the circumstances. *Id.* at 8, 109 S.Ct. at 1586. None of the suspect's actions need be criminal on their face, yet taken together, they can provide trained police with reasonable suspicion.

In arguing that the Mobile police officers did not have a sufficient legal basis to stop the Honda, Hires relies on the Supreme Court's decision in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *White,* the Court noted that an anonymous telephone tip [3] absent sufficient corroborating evidence would not justify a *Terry* stop and search. *Id.* at 329, 110 S.Ct. at 2415–16. Within the context of an informant's tip, a reasonable suspicion would exist if the informant had the ability to predict the suspect's future actions as compared to just merely relaying presently observable facts. On this issue, the *White* Court stated as follows:

> The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of

[presently observable facts]. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. *What was important was the caller's ability to predict respondent's future behavior,* because it demonstrated inside information—a special familiarity with respondent's affairs.... When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

*Id.* at 332, 110 S.Ct. at 2417 (emphasis added). Hires contends that Molyneaux and his colleagues only corroborated presently observable facts before stopping the Honda, instead of waiting to observe if any of the informant's predictions or future conduct proved to be true. Thus, he claims the stop and search violates *White.*

 It is clear that the police corroborated much of the informant's information in this case. For example, the description, license plate, and location of Lee's car at a specified hotel matched the facts provided by the informant. Also, Lee was with a woman and child just as the informant had said he would be. These observations were presently observable facts, however, and might not be sufficient in and of themselves to lend the necessary credence to the informant's tip to create a reasonable suspicion of drug trafficking.[4] Nevertheless, when Lee carried a

---

3. The Supreme Court noted that the reliance of the police in *White* on the anonymous telephone tip, among other things, gave rise to a "close case". *Id.* at 332, 110 S.Ct. at 2417. Hires argues that the facts here create an even closer case. We point out, however, an important difference between the facts of *White* and the case *sub judice.* In Hires' case, Molyneaux of the Mobile police did not just act on an anonymous telephone tip. In addition to two phone calls, Molyneaux met the informant face to face. We believe that the informant's willingness to meet personally with the police adds credibility and reliability to the information he relayed with respect to the alleged criminal activity. Furthermore, such a personal meeting can hardly be called an "anonymous" tip as the term is used in *White.* Therefore, contrary to Hires' assertions, we believe that the government has a stronger case here than did the State of Alabama in *White.*

4. In view of the informant's prediction of Lee's business practice, it is not necessary for us to decide whether corroboration of the presently observable facts was itself sufficient to justify the stop and search. We do note, however, one of our recent decisions in which we held that *Alabama v. White* "does not prevent law enforcement officers from relying and acting on anonymous tips when the information to be corroborated does not refer to future actions but instead details present circumstances." *United States v. Gibson,* 60 F.3d 1514, 1520 (11th Cir.1995); *see also United States v. Bold,* 19 F.3d 99 (2d Cir. 1994); *United States v. Clipper,* 973 F.2d 944 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 171 (1993). *Gibson* involved a tip regarding the possession of a firearm in a crowded nightclub, and the tip itself lacked predictions of the defendant's future conduct. Nevertheless, we found that under the circumstances, the police had a reasonable suspi-

paper sack to meet Hires and Cox in the Honda with local license plates, this action confirmed the informant's description of Lee's business routine. The information regarding Lee's business routine was a prediction of future actions sufficient to comply with the Supreme Court's *White* analysis. Corroboration of the presently observable facts and the prediction of future conduct together provided the Mobile police a sufficient indicia of reliability in this case. In view of the totality of the circumstances, the Mobile police had a reasonable suspicion of criminal conduct to allow them to stop and conduct an investigatory search of the Honda. Thus, we conclude that the district court was correct in denying Hire's motion to suppress evidence.

### B. Issuance of Subpoenas

■ The next issue before us is whether the district court erred by refusing Hire's request to subpoena witnesses and admit evidence in order to contradict testimony presented by a government witness. We will not disturb the district court's ruling on the admissibility of evidence or on a request for a subpoena absent an abuse of discretion. *United States v. Link,* 921 F.2d 1523, 1528 (11th Cir.), *cert. denied,* 500 U.S. 958, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991) (discussing issuance of subpoenas); *United States v. De Parias,* 805 F.2d 1447, 1453–54 (11th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987) (discussing admissibility of evidence). An abuse of discretion constitutes reversible error only if it prejudices the substantial rights of a defendant.

At the beginning of the trial, officer Lawson of the Mobile police testified that, during the protective search of Hires on the day of the arrest, he felt a bulge in Hire's pocket that could have concealed a weapon. When Lawson looked into the pocket, however, he found that the bulge was a wad of cash and some crack cocaine. Lawson testified that the money had not been seized because it amounted to less than the minimum amount of currency subject to seizure under police department guidelines. Hires sought to contradict this testimony by introducing documents from the county jail showing that he possessed only forty cents at the time of booking. Hires also asked the district court to order the issuance of subpoenas for witnesses to authenticate the documents. According to Hires, this evidence would not only have decreased Lawson's credibility, but it also would have decreased the impression given to the jury that Hires carried cash because he was involved in the drug trade. The district court refused both requests.

■ We need not consider whether the district court was correct in making its rulings, however, due to subsequent events in the trial. Specifically, on the day following Lawson's testimony, officer Molyneaux of the Mobile police, presented as a government witness, testified that the cash that created the bulge in Hire's pocket actually had been seized. This money mistakenly had been included with the cash that they had taken from Lee's hotel room. We conclude that Molyneaux's testimony rendered irrelevant the evidence Hires wished to introduce at trial. With respect to Hires' desire to call Lawson's credibility into question, Molyneaux's contradictory testimony achieved that result. Furthermore, the explanation that Hires' money was included with the money seized from Lee's hotel room explains away any possible discrepancies between the fact that Hires had a substantial amount of cash at the time of the arrest, but only had forty cents when he was booked at the county jail. Thus, these arguments do not present Hires with grounds to challenge his con-

---

cion to stop and search the defendant even though they merely confirmed presently observable facts. The imminent threat to public and personal safety created by the suspected possession of a firearm justified the search without the need to predict the defendant's future conduct. *Gibson,* 60 F.3d at 1520–21. Whether the *Gibson* rationale applies to a drug case is a question we leave open for another day. But we point out

that in this case, the informant told officer Molyneaux of the Mobile police that Lee was carrying an automatic pistol on the day of the stop and search to protect his cocaine and proceeds. Since it was suspected that Lee was carrying a firearm, it is arguable under *Gibson* that corroboration of the presently observable facts itself would have created reasonable suspicion to justify the stop and search.

viction.[5]

### C. Jury Charge

Hires next objects to the district court's refusal to charge the jury on the lesser included offense of simple possession of a controlled substance. We review a district court's refusal to give a particular jury charge for abuse of discretion. *United States v. Morris,* 20 F.3d 1111, 1114 (11th Cir.1994); *United States v. Morales,* 978 F.2d 650, 652 (11th Cir.1992). An abuse of discretion may occur where the evidence would permit a rational jury to find the defendant guilty of the lesser offense and not the greater. *United States v. Catchings,* 922 F.2d 777, 780 (11th Cir.), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991).

In this case, there appears to be no significant evidence presented to support the possibility that the crack cocaine in Hires' pocket was for his personal use. Testimony was presented to the district court showing that street distributions to users generally occurs in tenths of grams, but Hires had 16.38 grams in his pocket. Furthermore, evidence at trial showed that Lee supplied distributors in Mobile, rather than directly to users. Records recovered from Lee's hotel room listed Hires, under his known nickname of "Heavy", as one of Lee's distributors. Based upon this evidence and the lack of evidence regarding personal use, we cannot conclude that a rational jury could have found Hires guilty of the lesser offense of mere possession and *not* the greater one of possession with the intent to distribute.[6]

More importantly, we point out that during closing arguments, defense counsel told the jury that Hires could still be prosecuted for simple possession by the State of Alabama if he were not found guilty of the

greater offense. Therefore, we cannot agree with Hires' contention that the jury found him guilty of the greater offense because they were unaware of the availability of the lesser offense. To the contrary, the jury knew that the lesser offense charge could be available to Hires in another forum, yet they found him guilty of the greater offense. In view of the jury's knowledge of the lesser offense, Hires' request to instruct them about it becomes irrelevant.

### D. Request for New Trial

Hires' final challenge to his conviction is that the district court erred in denying his motion for a new trial. Since a motion for new trial in a criminal case is addressed to the sound discretion of the trial court, we will uphold a denial of the motion absent an abuse of that discretion. *United States v. Michael,* 17 F.3d 1383, 1384 (11th Cir.1994).

At the joint sentencing hearing after trial, Lee testified that the crack cocaine in the Honda belonged to him, and his attempts at trial to shift blame to Hires had been perjury. Lee claimed that Hires, Cox, and he were going to look at a car and that Hires knew nothing about Lee's drug dealings. Hires' motion for a new trial was based upon this recantation by Lee. A new trial is warranted based upon circumstances coming to light after trial only if the following five part test is satisfied: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result. *United States v. Starrett,* 55 F.3d 1525, 1554 (11th Cir.1995); *United States v. Gates,* 10 F.3d 765, 767 (11th Cir.

---

5. These facts aside, however, our review of the record reveals that the district court did not abuse its discretion by denying Hires' requests.

6. In arguing that his instruction for the lesser offense was justified, Hires places great emphasis on the case of *United States v. Gibbs,* 904 F.2d 52 (D.C.Cir.1990). In *Gibbs,* the court held that a defendant was entitled to an instruction regarding simple possession because 15.5 grams of cocaine was not inconsistent with personal use.

While Hires' possession of 16.38 grams is close to the 15.5 in *Gibbs,* we find the two cases distinguishable. The amount of cocaine in Hires' possession in conjunction with the other evidence in this case would prevent a reasonable jury from finding that Hires did not intend to distribute. The presence of this additional evidence separates Hires from the defendant in *Gibbs.*

1993), *vacated in part on other grounds,* 20 F.3d 1550 (11th Cir.1994). The failure to satisfy any one of these elements is fatal to a motion for new trial. *Starrett,* 55 F.3d at 1554.

■ The parts of this test at issue in the instant case are whether Lee's recantation was cumulative and whether a new trial would probably produce a different result. We find that Lee's testimony is cumulative of that evidence proffered by Cox, the acquitted codefendant who was driving the Honda at the time of the stop and arrest. Further, it does not appear that a new trial would produce a different result since the government could impeach Lee on many inconsistencies using his trial testimony. Lee did not explain why he took the large amount of crack to the Honda if they were only going in search of a new car or why records recovered from Lee's hotel room listed Hires as one of the distributors. Based on these facts, it is not probable that a new trial would produce a different result. Since Hires has failed to meet at least two of the required elements necessary for a new trial, the district court did not abuse its discretion in denying his motion.[7]

### E. Sentencing

■ Both Lee and Hires contend that the district court erred in calculating the amount of drugs attributable to them for purposes of computing the applicable guideline sentence. The trial court's determination of the amount of drugs attributable to a defendant for sentencing purposes is a factual finding subject to reversal only if it constitutes clear error. *United States v. Ramsdale,* 61 F.3d 825, 828 (11th Cir.1995); *United States v. Butler,* 41 F.3d 1435, 1442 (11th Cir.1995).

In sentencing Hires, the district court found that he was involved with or was aware of at least 1.5 kilograms of cocaine. Such a finding established an offense level of 38

under Sentencing Guidelines which provided for sentencing in the range of 235 to 293 months. The district court sentenced Hires to the minimum 235 months. On appeal, Hires suggests that the maximum amount that should be attributed to him is the amount of cocaine found in the Honda at the time of the arrest. This amount would indicate a base level offense of 34 since it involved between 150 and 500 grams of cocaine base. A base offense level of 34 would provide a much shorter sentencing range of 151 to 188 months in Hires' case. In presenting such an argument, Hires contends that he was merely an independent street level drug user and should not be accountable for drug dealers sharing a common source of supply. *See* U.S.S.G. § 1B1.3, Application Note 2, Illustration 6. Thus, he argues that the district court erred by attributing to him the much larger amount of cocaine.

■ At the outset, we note that Hires was convicted by a jury of *conspiracy* to possess a controlled substance with intent to distribute. According to our case law on sentencing, "a member of a drug conspiracy is liable for his own acts *and the acts of others* in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." *United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir.1993) (emphasis added); *see also* U.S.S.G. § 1B1.3(a)(1); *United States v. Lawrence,* 47 F.3d 1559, 1566 (11th Cir.1995); *Butler,* 41 F.3d at 1442–43. Thus, the fact the district court held Hires accountable for the drug amounts attributable to other coconspirators is not an error in and of itself. Nevertheless, we further stated in *Ismond* as follows:

[T]o determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. Once the

---

7. In presenting on appeal his argument for a new trial, Hires relies heavily upon the cases of *Newsom v. United States,* 311 F.2d 74 (5th Cir. 1962), and *Ledet v. United States,* 297 F.2d 737 (5th Cir.1962). In these cases, the former Fifth Circuit granted new trials based on recantations by codefendants. We find *Newsom* and *Ledet* to be distinguishable from the facts of this case.

The Fifth Circuit found little other evidence against the defendants in those cases except for the recanted testimony. In contrast, as noted above, evidence aside from Lee's recanted testimony existed upon which to convict Hires. Therefore, we cannot say that a new trial would "probably" produce a different result.

extent of a defendant's participation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation. If the court does not make individualized findings, the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to a defendant.

*Id.* at 1499 (citations omitted); *see also Lawrence,* 47 F.3d at 1559; *Butler,* 41 F.3d at 1443. Hires' case turns on the district court's perception of his role in the conspiracy, but there are no factual findings from the sentencing hearing to determine what that role is. Furthermore, the record is not so obvious to support our making such a conclusion at this time. Therefore, we must remand sentencing to the district court to allow it to make the necessary specific findings regarding the individual scope of Hires' involvement in the conspiracy. Once his level of participation is determined, the district court must then calculate the amount of drugs that are reasonably foreseeable in connection with that level of participation.[8]

Lee argues that the district court erred by relying on hearsay and unreliable witnesses in determining the amount of drugs attributable to him for sentencing purposes. In imposing the sentence, the district court found that Lee was responsible for more than fifteen kilograms of cocaine. Under the Sentencing Guidelines, this finding necessitated a base offense level of 42. The district court further found that Lee was the leader and organizer of an offense which involved five or more people, requiring a four level increase. A further two level increase occurred due to Lee's obstruction of justice. Thus, Lee's base offense level rose to 48, and the district court sentenced him to life imprisonment.[9] In calculating the amount of drugs attributable to Lee, however, the district court relied on the statements of Steve Russell, one of Lee's coconspirators. These statements by Russell were made to a DEA agent prior to Lee's trial. At the time of trial and sentencing, Russell was a fugitive from justice and not available to testify. Nevertheless, his testimony was included in the Presentence Investigation Report utilized by the district court at sentencing, and the government presented the testimony of the DEA agent who had interviewed Russell. Lee also claims that the district court's findings were based on testimony provided by others whose crack use and addiction impaired their memories. Lee contends that all this testimony lacked the necessary reliability to resolve the issue of drug quantity for sentencing purposes.

■ We focus primarily on Lee's objection to the district court's use of Russell's hearsay evidence as a basis for deciding his sentence. According to the Sentencing Guidelines, and our case law interpreting them, the district court "may consider any information, including reliable hearsay, regardless of the information's admissibility at trial, provided that there are *sufficient indicia of reliability* to support its probable accuracy." *United States v. Castellanos,* 904 F.2d 1490, 1495 (11th Cir.1990) (emphasis added); *see also* U.S.S.G. § 6A1.3; *United States v. Griffin,* 945 F.2d 378, 381–82 (11th Cir.1991) (Morgan, J.), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1958, 118 L.Ed.2d 561 (1992); *United States v. Query,* 928 F.2d 383, 384–85 (11th Cir.1991). Thus, the fact that evidence is hearsay is not enough, in itself, to prevent a court from considering it. Instead, the focus is upon the question of its reliability, which must be determined on a case by case basis.

■ In Lee's case, it appears that the only evidence of the large amount of drugs attributable to him was Russell's hearsay statement. The government contends that this evidence is reliable because Russell made these statements against his penal interest. It is true that a statement made

8. Hires also suggests that the amount of drugs to be considered at sentencing was established by the jury during the civil forfeiture proceedings which accompanied his criminal trial. We find that this argument has no merit since the district court was allowed to consider at sentencing a wide range of additional and reliable evidence.

9. The Sentencing Guidelines themselves provide up to a base level offense of 43, which requires life in prison. Thus, any finding of the district court of a base level offense above 43 will result in a life sentence as well.

against one's penal interest may bolster its credibility. In Russell's case, however, we find that his penal interest fails to qualify as a "sufficient indicia of reliability", particularly in view of Russell's status as a fugitive from justice. Furthermore, the district court's sentencing statement does not reveal the reasons that led it to conclude that Russell's hearsay statements were reliable. Specific findings on Russell's credibility are necessary before the district court can use this evidence as a basis for determining the base offense level in order to sentence Lee. *Cf. United States v. Miele,* 989 F.2d 659, 665 (3d Cir.1993) (vacating sentence in absence of any findings by district court to explain its reliance on hearsay). Therefore, we remand Lee's sentencing to the district court to make further findings as to the reliability of Russell's hearsay statement.[10] After determining the reliability of the evidence against Lee, the district court must make specific findings as to the *amount* of drugs attributable to Lee in view of this evidence.

 We are less concerned with Lee's contentions that the district court's decision was based on testimony provided at trial by witnesses whose crack use and addiction impaired their memories. Unlike the case with Russell's hearsay, the district court had the opportunity to observe these witnesses first hand at trial. For this reason, we give great deference to the district court's assessment of the credibility and evidentiary content of their testimony. *See Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246, 248 (11th Cir.1995) (discussing witness credibility in civil context); *United States v. Zuleta–Alvarez,* 922 F.2d 33, 37 (1st Cir.1990), *cert. denied,* 500 U.S. 927, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991). Furthermore, the mere fact that these witnesses were drug users does not automatically prove that they are unreliable. Lee has pointed to no evidence which indicates that these witnesses were addicts with impaired memories, which would call their testimony into question. *Cf. United States v. Simmons,* 964 F.2d 763, 776 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992) (finding that

statements from a witness who had lied at trial and whose memory clearly was impaired from a history of cocaine addiction lacked the "sufficient indicia of reliability" for sentencing purposes). Finally, the district court's sentencing statement makes no reference to the testimony provided by these witnesses, making it appear that it did not consider this evidence when sentencing Lee. On remand, however, the district court is free to consider this evidence, provided it specifies the drug quantities the evidence attributes to Lee.

### CONCLUSION

For the foregoing reasons, we find no error on the part of the district court that would require us to overturn Hires' conviction. Nevertheless, we must vacate the sentences of both Lee and Hires and remand for the district court to make specific factual findings with respect to the amount of drugs attributable to each defendant.

AFFIRMED in part, VACATED in part, and REMANDED.

---

**10.** Reliability may be established by additional evidence which corroborates Russell's hearsay as

to the large amounts of crack cocaine the conspiracy possessed.