[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15788
Non-Argument Calendar

_____

D. C. Docket No. 04-00490-CR-T-17TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELIAS ABUSAID, JR.,
a.k.a. Lou,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 28, 2008)**

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Elias Abusaid, Jr., who proceeded pro se and was convicted by a jury of maintaining an establishment for the purpose of unlawfully distributing or using a controlled substance, specifically Methylenedioxymethamphetamine ("MDMA"), in violation of 21 U.S.C. § 856(a)(2) and (b), and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), appeals the district court's denial of his motion for a new trial, pursuant to Fed.R.Crim.P Rule 33, on the grounds of newly discovered evidence.[1] For the reasons discussed below, we affirm.

## I.

At Abusaid's trial, the following relevant testimony was presented. Christopher Casio, an agent of the Drug Enforcement Agency ("DEA"), testified for the government that he had investigated Abusaid and his Tampa, Florida, establishment with the aid of a certain confidential source. On cross-examination, Abusaid asked Agent Casio the name of his confidential source. The government objected to the question on the grounds of preserving confidentiality, and the district court sustained the objection. Abusaid then asked the name of the confidential source's place of employment. The government objected on the same grounds, and the district court sustained the objection. Abusaid then asked, "Does

---

[1] Abusaid was sentenced to serve two concurrent terms of 97 months' imprisonment.

she not work at the Mons Venus [strip club]?" The government objected on the same grounds, and the district court sustained the objection.

James Toliver, a pharmacologist with the DEA, testified for the government that MDMA, a stimulant, had the effect of dehydrating the user's body. Scott Albrecht, an agent with the DEA in Tampa, testified for the government that the DEA began investigating Abusaid and his establishment when the Sarasota, Florida, police department contacted it and indicated that a male confidential source wished to provide information about drug dealing within and around Abusaid's establishment.

Kirby Rainsberger, an Assistant City Attorney, testified for Abusaid that he represented the City of Tampa ("the City") in a civil suit filed by Abusaid against the City and, originally, the DEA. The suit was filed before Abusaid's arrest on the instant charges. On cross-examination, the government asked, "[B]ased on any lawsuit that was filed by the defendant against the [City], did you ever request that the DEA investigate the defendant or his club?" Rainsberger replied, "Never." The government then asked whether Rainberger knew whether the local police department had contacted a neighboring police department and asked the neighboring police department to provide a confidential source with information on Abusaid's establishment. Rainsberger again replied in the negative.

Abusaid testified on his own behalf. On cross-examination, he testified that he sold "massive" amounts of water at his establishment. Also, the county wherein his establishment was operated had passed a "dance hall rave ordinance" requiring a special permit for clubs that charged cover charges and featured music and dancing but that were not licensed to serve alcohol. Abusaid's establishment fell under this ordinance. However, Abusaid took steps to circumvent the special permit requirement, such as doing away with the traditional cover charge but instituting fees for entering "VIP" rooms that were paid once a patron was indoors.

After the jury found him guilty, Abusaid filed the instant motion for a new trial on the basis of newly discovered evidence. Therein, Abusaid pointed to four pieces of newly discovered evidence that would have altered the outcome of his trial. First, Abusaid stated that, in Abusaid v. Hillsborough County Bd. of County Comm'rs, WL 2669210 (M.D. Fla. 2007), the Middle District of Florida recently had held that the dance hall rave ordinance was unconstitutional. Abusaid argued that this evidence undermined the government's suggestion at trial that Abusaid was not credible and was a law breaker because of his efforts to skirt the ordinance's requirements. Because the dance hall rave ordinance was unconstitutional, Abusaid was not "hiding from the law," as the government had indicated. Therefore, the evidence at a new trial would show that Abusaid was a

4

law-abiding club owner and likely would lead to a different verdict.

Next, Abusaid stated that he recently had discovered the name of the previously unnamed confidential source who helped Agent Casio investigate Abusaid. Abusaid likewise stated that he had discovered certain information about this female confidential source. Abusaid argued that, had the government provided her name before trial, Abusaid could have called her as a defense witness. If he had called her, she could have provided exculpatory information. He also could have impeached her credibility by demonstrating that she supported herself as an exotic dancer at the Mons Venus strip club and as a prostitute, was a cocaine addict and drinker, and had several drinking-and-driving and drug-related arrests. He likewise could have impeached her credibility by demonstrating that she would have "done almost anything to 'work off her charges,'" including trading sex for drugs from some of Abusaid's employees. Had the "centerpiece" of the government's case against Abusaid been impeached in this manner, the jury may have reached a different result.

Next, Abusaid stated that he recently had obtained a document from the Florida Department of Law Enforcement ("FDLE") that demonstrated that the DEA and local police had asked the FDLE to help investigate Abusaid and his establishment. Abusaid argued that this document showed that Agent Albrecht and

5

Assistant City Attorney Rainsberger were lying when they testified that the investigation of Abusaid and his establishment was not initiated by the DEA and the City in retaliation of Abusaid filing a civil suit against the DEA and the City. But for this false testimony, he could have pursued his retaliation defense. Had the jury known that the police orchestrated the "raid" of his establishment in order to undermine his civil suit against the City and the DEA, it might have acquitted him. Abusaid attached a copy of the FDLE document. It includes one line stating that the DEA and City "requests assistance in reference to drug activity at [Abusaid's] club."

Finally, Abusaid stated that newspaper articles about recently published studies by the Multi-disciplinary Association for Psychedelic Studies showed that MDMA actually suppresses the user's thirst. Abusaid argued that this evidence undermined the government's suggestion that Abusaid must have condoned MDMA use because he sold "massive" amounts of water at his establishment. This evidence also established that Tolliver's "expert" testimony was flawed. Had the jury heard that the expert's testimony was incorrect and that Abusaid's provision of water was not probative evidence, it might have reached a different result.

The government responded that, even though the Middle District of Florida

6

later found the dance hall rave ordinance unconstitutional, Abusaid's state of mind and actions when the ordinance remained in effect nevertheless were relevant to his character. Doing away with the ordinance after Abusaid's actions, therefore, had no bearing on his case. The government also responded that Abusaid failed to demonstrate what new and helpful information Hauk could provide, that Abusaid obviously knew who the confidential source was at the time of trial because he knew her place of employment, and that the information cited by Abusaid simply was impeachment evidence against a witness who never testified. Therefore, any effect Hauk's presence may have had on Abusaid's trial was purely speculative and wholly unsubstantiated. The government likewise responded that the copy of the FDLE report did not demonstrate that Agent Albrecht or Assistant City Attorney Rainsberger had lied, as it merely showed that they asked the FDLE for investigative assistance, which is a common practice. The government finally responded that the reports that MDMA actually suppresses thirst would only be valuable to Abusaid's case to the limited extent that they could impeach Tolliver's testimony. It was unlikely that the jury would acquit Abusaid because of these reports.

The district court denied Abusaid's motion. The district court reasoned that the government's response was persuasive and incorporated the government's

7

arguments into its order.

## II.

We review a district court's denial of a Rule 33 motion for a new trial for abuse of discretion. United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006). Pursuant to Rule 33, a defendant may file a motion for a new trial based on newly discovered evidence within three years of the jury's verdict. Fed.R.Crim.P. 33(b)(1). "Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution." See Campa, 459 F.3d at 1151. The defendant bears the burden of proving that the circumstances warrant this form of relief. See id. To satisfy this burden, the defendant must demonstrate that: (1) the evidence was in fact discovered following trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such nature that it is probable that it would produce a different result in a new trial. United States v. Lee, 68 F.3d 1267, 1273 (11th Cir. 1995). The defendant's failure to demonstrate any one of these factors defeats his motion. See id. at 1274.

## III.

Here, the district court did not abuse its discretion in denying Abusaid's

8

motion.  See Campa, 459 F.3d at 1151.  Abusaid has not satisfied his burden of demonstrating that the new evidence was material to his defense or not merely impeaching.  See Campa, 459 F.3d at 1151; Lee, 68 F.3d at 1273.  Specifically, Abusaid has not shown that the evidence that the dance hall rave ordinance later was found unconstitutional is material.  See Lee, 68 F.3d at 1273.  The government illustrated to the jury that Abusaid skirted the dance hall rave ordinance.  This evidence was relevant to the government's case in showing Abusaid's state of mind, namely that he was the kind of person who was willing to not follow the law. The new evidence does not demonstrate that Abusaid's state of mind at the time was something other than endeavoring to skirt the law.  Regardless of the new case, at the time of Abusaid's actions, the dance hall rave ordinance was the law as far as Abusaid knew.  Thus, because the new case does not illustrate that Abusaid did not attempt to skirt the law, it is immaterial.  See id.

Abusaid also has not shown that the evidence on the female confidential source's character is not merely impeachment evidence.  See id.  Newly discovered impeachment evidence, such as a witness's ulterior motives, drug use, and criminal history, is insufficient to warrant a new trial.  See id.  To the extent that Abusaid indicated that the female confidential source would have provided exculpatory evidence had he been able to call her as a witness, Abusaid failed to explain the

9

nature of this exculpatory evidence, such that its cumulative nature and materiality cannot be analyzed. See id. Thus, because Abusaid only has stated that the new information about the female confidential source goes to her character as a witness, it is insufficient. See id.

Abusaid likewise has not shown that the evidence that the DEA and City requested FDLE assistance in investigating Abusaid and his establishment is material. See id. Abusaid's intended use of this evidence was to show that the DEA and the City inappropriately investigated him merely as a means of getting back at him for filing a civil suit against them. This evidence does not demonstrate, however, that the City and DEA initiated the investigation with retaliatory motives. Rather, it shows only that the City and DEA asked the FDLE for support. Thus, because the new document does not support Abusaid's argument, it is immaterial. See id.

Abusaid finally has not shown that the evidence that MDMA actually suppresses thirst is material. See id. The government illustrated to the jury that Abusaid must have known of, and promoted and profited from, the MDMA usage at his establishment because he sold "massive" amounts of water at his establishment, a well-known "accessory" of the MDMA-usage culture. This evidence was relevant to the government's case in showing Abusaid's state of

10

mind, namely that he must have encouraged the MDMA usage because he provided what he thought were the tools necessary for its usage. The new evidence does not demonstrate that Abusaid's state of mind was something different. Regardless of the new evidence to the contrary, at the time of Abusaid's actions, he and his patrons probably thought that MDMA users needed water. Thus, because the new case does not illustrate that Abusaid did not think water was a common accessory of the MDMA-usage culture, it is immaterial. See id.

Because Abusaid has not shown that the evidence is material to his case or not merely impeaching, he cannot satisfy his burden. See id. at 1274. Accordingly, we affirm the district court's denial.

**AFFIRMED.**