[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 21, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17242
Non-Argument Calendar

_____

D. C. Docket No. 07-00032-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY FINCH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 21, 2009)

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Tony Finch appeals his sentence of 228 months of imprisonment for

conspiring to manufacture, to possess with intent to distribute, and to distribute a quantity of methamphetamine. 21 U.S.C. §§ 846, 841(a)(1). Finch challenges the amount of methamphetamine attributed to him in the presentence investigation report and the enhancement of his sentence for causing a substantial risk of harm to a minor. We affirm.

## I. BACKGROUND

On October 7, 2008, officers of the Sheriff's Department of Bulloch County, Georgia, went to Finch's residence to investigate whether he had a car that had been reported stolen. At the sight of the officers on Finch's property, Victoria Foley discarded a device used to smoke methamphetamine, and she and Marlena Taylor fled. When Taylor was apprehended, she told officers that Finch and Benjamin Roberts were inside the home. After one officer recalled that there was an outstanding warrant to arrest Finch, officers entered the house and discovered Finch asleep in a bedroom. The officers found Roberts and Julie Livingston in another bedroom.

Officers secured Finch's house and the surrounding property. The officers entered a large storage building about 20 feet from Finch's house and saw a bucket of crushed pseudoephedrine tablets. After Finch refused to consent to a search of his property, the officers obtained a search warrant. The officers returned to the

storage building, where they found a white plastic bucket that contained several coffee filters and a strainer; a refrigerated tank containing anhydrous ammonia; a green backpack that contained packages of salt, funnels, liquid Heet, Liquid Fire drain cleaner, and lithium batteries; a blue backpack that contained a strainer and muratic acid; two Mason jars that had been used to manufacture methamphetamine; two pump sprayers that emitted hydrochloric gas; and a silver thermos that contained anhydrous ammonia. The officers next searched Finch's home and discovered several cans of starting fluid; a device used to smoke methamphetamine; a digital scale; coffee filters; and Xanax tablets. The officers seized 108.3 grams of methamphetamine from Finch's property.

For the next several days, officers interviewed Finch and his cohorts about the methamphetamine operation. Finch admitted that he had entered a conspiracy to manufacture methamphetamine five months before his arrest. Finch stated that the conspirators produced between 7 and 54 grams each week and he received 3.5 grams for his participation. Finch stated that he witnessed three members of the conspiracy manufacture methamphetamine in a shed behind Glenn Shuman's property in Brooklet, Georgia. Finch said that the group produced as much as 80 grams of methamphetamine at each cook, and he had seen 80 grams of methamphetamine at Shuman's residence on October 5, 2008.

Other cohorts described Finch's role in the methamphetamine operation. Roberts, Livingston, and Taylor admitted that they had lived with Finch and had shared methamphetamine. Kelly Coesens told investigators that she and Finch "used methamphetamine extensively" the weekend before his arrest. Foley, who had been discovered outside Finch's home, told officers that she had purchased two grams of methamphetamine from Finch on two occasions and that Finch supplied all the methamphetamine used by Taylor, Roberts, and Livingston. Foley stated that Brian Dean, a member of the methamphetamine operation, and Taylor had a two-year-old daughter who had been at Finch's home the morning of October 7, 2008. Foley also stated that she had transported Finch, Taylor, and Taylor's daughter to Shuman's residence, where they obtained anhydrous ammonia that the group brought to Finch's residence in a silver thermos. Shuman admitted that he and Finch had manufactured methamphetamine on two occasions and that the silver thermos that had been discovered in the large storage building belonged to Jason Thorne, another member of the conspiracy.

While Finch was incarcerated, he gave an inmate a telephone number to call to order methamphetamine. After the inmate told authorities about the encounter, federal agents arranged for the inmate to speak to Finch a second time. During their second encounter, Finch advised the inmate to tell the female who answered

4

the telephone to contact "JJ," an alias for Thorne, to obtain methamphetamine. Finch told the inmate that he had two tanks of anhydrous ammonia hidden near the Ogeechee River.

Finch, Taylor, Thorne, and a codefendant were indicted for conspiring to manufacture, possessing with intent to distribute, and distributing 50 grams or more of methamphetamine or 500 grams or more of a mixture of a substance containing a detectable amount of methamphetamine. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii). The government offered to recommend that Finch receive a three-level reduction for acceptance of responsibility in exchange for his plea of guilty to the lesser-included offense of conspiracy to manufacture, to possess with intent to distribute, and to distribute a quantity of methamphetamine. Id. §§ 846, 841(a)(1). Finch admitted, as part of the factual basis of the plea agreement, "that his plea of guilty constitute[d] proof of the lesser included offense . . . without any drug quantity threshold being alleged for penalty enhancing purposes." The district court accepted Finch's plea of guilty.

The presentence investigation report attributed to Finch "a minimum of 350 grams of methamphetamine mixture." The report based its calculation "on the 108.3 grams of methamphetamine mixture seized [from Finch's property] on October 7, 2007, and a historical quantity based on statements of codefendants,

5

unindicted coconspirators, and witnesses." The report provided a base offense level of 30, United States Sentencing Guidelines § 2D1.1(c)(5) (Nov. 2007), increased that level by six points because the decision to transport anhydrous ammonia in a thermos created a substantial risk of harm to a minor, id. § 2D1.1(b)(10)(D), and decreased that level by three points for acceptance of responsibility, id. § 3E1.1. The report provided a sentencing range between 235 and 293 months of imprisonment based on Finch's criminal history of VI as a career offender. Id. § 4B1.1. Because the statutory maximum sentence was 20 years, 21 U.S.C. § 841(b)(1)(C), the Sentencing Guidelines provided a sentence between 235 and 240 months of imprisonment.

Finch objected to the presentence report on two grounds. Finch argued that he was responsible for 108.3 grams of methamphetamine and the report relied on unreliable sources to attribute to Finch an additional 241.7 grams of methamphetamine. Finch also argued that there was no evidence to establish that transporting the thermos of anhydrous ammonia put Taylor's two-year-old daughter at risk of harm and the six-level enhancement was intended to apply when a minor is near a methamphetamine laboratory.

At the sentencing hearing, the government presented evidence to respond to Finch's objections. Victoria Foley testified that, after she transported Finch,

6

Thorne, Taylor, and Taylor's two-year-old daughter to Shuman's house, the group smoked methamphetamine, and they returned to Finch's house with a thermos of anhydrous ammonia. Ross Butler, a forensic chemist, testified that transporting anhydrous ammonia in a thermos or other unapproved container is extremely dangerous because the substance must be kept at very low temperatures and, if it exceeds negative 28 degrees, the substance could erode the thermos or cause it to burst and emit toxic gas that could cause those exposed to suffocate. Butler also testified that the various chemicals discovered in Finch's storage building were highly flammable and the inhalation of those chemicals could burn the respiratory system or cause death. Agent Kent Musey testified about the methamphetamine seized from Finch's residence and the statements by Finch's cohorts attributing additional amounts of methamphetamine to Finch.

The district court overruled Finch's objections to the presentence report. The district court ruled that the report provided a "fair analysis" about Finch's responsibility for 350 grams of methamphetamine. The court also ruled that, based on the testimony about the volatility of anhydrous ammonia and its proximity to Taylor's child, "the six point[]" enhancement was "warranted."

The district court warned Finch that he faced a "severe sentence" because he "[had] never taken a proceeding seriously." The court acknowledged that Finch

7

was addicted to methamphetamine, and the court stated that the drug had "ruined" Finch's life and, "by [his] involvement as a manufacturer and distributor, [Finch] [had] no doubt ruined the lives of others." Based on "[a]ll the factors set forth in 18 U.S.C. 3553(a)[,] . . . Finch's record and disregard, and aplomb . . . to continue aiding and abetting drug distribution even after his arrest[,]" the district court sentenced Finch to 240 months of imprisonment. "[B]ecause [Finch] entered a plea and agreed to waive [his] appeal," the district court "[took] 12 months off" Finch's sentence and imposed a term of 228 months of imprisonment.

## II. STANDARDS OF REVIEW

We review for clear error "a district court's determination of the quantity of drugs used to establish a base offense level[.]" United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). We review de novo the application of the risk-to-a-minor enhancement to a sentence. United States v. Florence, 333 F.3d 1290, 1292 (11th Cir. 2003). The district court may apply the enhancement when it finds "that the defendant's actions placed a minor at risk." Id. at 1293.

## III. DISCUSSION

Finch challenges his sentence on two grounds. First, Finch complains the district court credited unreliable evidence to attribute to Finch more methamphetamine than the amount seized from his residence. Second, Finch

8

contends he is not entitled to a six-level enhancement because the transportation of anhydrous ammonia was not sufficiently dangerous to place Taylor's child at risk. These arguments fail.

The district court did not clearly err by attributing to Finch 350 grams of methamphetamine. The government presented reliable and specific evidence that Finch was responsible for more methamphetamine than that discovered by law enforcement. See United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). In addition to the 108 grams seized from Finch's residence, Finch admitted that during the conspiracy he had participated in about 20 methamphetamine cooks that produced between 7 and 54 grams, for which he received 70 grams of methamphetamine; he had participated in methamphetamine cooks at Glenn Shuman's residence that produced 80 grams of methamphetamine; and he had observed 80 grams of methamphetamine at Shuman's residence two days before the search of his house. See United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993) ("For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." (citing U.S.S.G. § 1B1.3(a)(1)). Victoria Foley, Kelly Coesens, and Glenn Shuman told authorities that Finch either sold or provided to them additional

9

amounts of methamphetamine. Ample evidence supported the amount of methamphetamine attributed to Finch.

The district court also did not err by enhancing Finch's sentence for creating a substantial risk of harm to the life of a minor. The district court was entitled to credit testimony from Foley that she, Finch, Thorne, and Taylor transported anhydrous ammonia in an unapproved container and in a vehicle occupied by Taylor's two-year-old daughter. See United States v. Lee, 68 F.3d 1267, 1275 (11th Cir. 1995). Based on the serious hazards created by handling anhydrous ammonia, the district court did not err by finding that Finch's participation in that conduct exhibited a reckless disregard for the safety of the child.

## IV. CONCLUSION

Finch's sentence is **AFFIRMED.**