[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

No. 11-10049
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00261-JSM-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IAN BROOK WEIGANT,
a.k.a. Bullet,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 22, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Ian Brook Weigant appeals his 78-month sentence for unlawful possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). We affirm.

## I. BACKGROUND

Defendant Weigant pled guilty to a one-count indictment charging him with possessing a firearm and ammunition while a convicted felon. The firearm listed in the indictment was a "Glock, model 27, .40 caliber pistol."

According to the presentence investigation report ("PSI"), a confidential informant ("CI") notified the Bradenton Police Department that on April 26, 2010, Defendant Weigant asked the CI to drive him to Tampa, Florida, to purchase drugs. The CI agreed to the trip and, while on the way, Weigant told the CI that Weigant planned to buy some guns for $200 each from the same people who were going to sell him the drugs. Weigant purchased three Glock handguns while in Tampa. Upon returning to Bradenton, Wiegant took two of the Glock handguns with him but left one Glock under the seat in the CI's vehicle.

The next day, government agents found a "baby Glock" handgun in the CI's vehicle but left it in the vehicle after inspecting it. At the agents' instructions, the CI used his cell phone to allow agents to monitor a conversation in which the CI advised Weigant that Weigant had left a handgun in the CI's vehicle. Agents then

2

watched Weigant go to the vehicle to retrieve the handgun.

On April 29, 2010, the CI forwarded the agents a picture that was taken that same day or the day before in which Weigant was holding a .308 caliber rifle. Later that day, agents arrested Weigant near his residence. Agents later searched Weigant's home and found the same "baby Glock" handgun retrieved from the CI's vehicle. The "baby Glock" was loaded with three rounds. The agents also discovered a box of ammunition for the handgun and a text message in Weigant's cell phone in which he offered to sell the .308 caliber rifle for $800. The agents never recovered the rifle.

The PSI assessed Weigant's base offense level as 20 for his 18 U.S.C. § 922(g)(1) offense. The PSI applied: (1) a two-level increase under U.S.S.G. § 2K2.1(b)(1)(A) for possessing between three and seven firearms; (2) a four-level increase under § 2K2.1(b)(4)(B) for obliterating the serial number of a firearm; (3) a four-level increase under § 2K2.1(b)(6) for intending to use a firearm in connection with another felony; and (4) a three-level decrease under § 3E1.1(a) and (b) for acceptance of responsibility and for timely notifying the government of his intent to plead guilty. The resulting offense level was 27. After assigning Weigant 25 criminal history points and a criminal history category of VI, the PSI

calculated an advisory guidelines sentence of 120 months' imprisonment.[1]

Before sentencing, Weigant objected to the two-level increase and denied possessing any firearm other than the one for which he was convicted. Weigant also objected to the four-level increases for obliterating a serial number and for intending to use the firearm in connection with another felony.

At sentencing, the government conceded that the four-level increase for obliterating a serial number should not apply, and the district court sustained the objection to the four-level increase for intending to use the firearm in connection with another felony. Weigant also iterated his objection to the guidelines' sentencing enhancement for possessing between three and seven firearms.

In response, the government called Detective Gregg Price, who testified that he had worked regularly with the CI for four years, resulting in approximately ten arrests. Price had never found the CI to be untruthful, and the CI's information was always accurate. The CI called Price after driving Weigant to purchase three Glock handguns from "some guys in a pickup truck" in Tampa, Florida. Weigant objected to Price's testimony about the CI on hearsay grounds unless the

---

[1]The guidelines range was 130 to 162 months for an offense level of 27 and a criminal history category of VI. However, 18 U.S.C. § 924(a)(2) establishes a maximum penalty of ten years' imprisonment for a violation of 18 U.S.C. § 922(g). Accordingly, the guidelines sentence becomes the maximum penalty, or 120 months' imprisonment. See U.S.S.G. § 5G1.1(a).

government planned to call the CI as a witness. However, the district court overruled the objection.

The CI told Price that Weigant purchased two regular-sized Glocks and a "baby Glock," which was the handgun recovered during the search of Weigant's residence. The CI stated that "Mr. Weigant was upset with two people in Palmetto, Florida, that had ripped him off for drugs, and he was going to kill them and take a bus out of town." Detective Price testified that the CI advised him that Weigant had left one of the handguns, the "baby Glock," under the passenger seat of the CI's vehicle. Several officers met with the CI, located and photographed the gun, swabbed it for DNA, and returned it to the vehicle.

Detective Price instructed the CI to confront Weigant about removing the handgun from the vehicle, while Price listened in through a phone concealed in the CI's pocket. Complying with this request, the CI awoke Weigant, who was staying at the CI's residence, and stated, "Hey, get up. You left one of your guns in the car." Weigant failed to respond, but the CI repeated, "You left one of your guns in the car. Go get it." Weigant then exited the house, and several officers observed Weigant go to the CI's vehicle, retrieve something from under the passenger seat, and conceal it under his shirt. Detective Price later executed a search warrant on the CI's residence and recovered the handgun.

5

Detective Price also testified that the CI had, at Price's request, asked Weigant about purchasing a firearm. Weigant sent the CI a photograph of himself holding a modified rifle with the text message that the gun was "a bad mother fucker." The CI forwarded the photograph and message to Detective Price. When arrested the next day, Weigant was wearing the same shorts depicted in the photograph. The photograph of Weigant posing with the rifle was admitted into evidence over Weigant's objection that it was inflammatory and irrelevant because the rifle was not one of the firearms that he was charged with possessing.

On cross-examination, Detective Price conceded that the officers recovered only the baby Glock handgun that Weigant had retrieved from the CI's vehicle and that Price had not seen the other two Glock handguns mentioned by the CI. Additionally, Price could not positively identify when the photograph of Weigant hold the rifle was taken. Price also testified that the CI had no pending criminal charges during the time the CI was working for Price on Weigant's case, but Price conceded that the CI had been using drugs while working on the case.

Weigant then took the stand himself and testified that, although he possessed the baby Glock, he did not possess any other gun. Weigant testified that he did not purchase the baby Glock, but rather the CI had given it to him. Weigant also testified that he sent the photograph of the rifle to the CI in response to the

6

CI's repeated requests to purchase an automatic weapon. However, Weigant planned to "just keep [the CI's] money and tell him he was burned." Weigant testified that he had "no intentions of giving that weapon up or – or even selling that weapon."

On cross-examination, Weigant testified that the CI had given him the "baby Glock" handgun but had also asked Weigant for a different gun. On redirect examination, Weigant clarified that the CI had asked for "an automatic weapon as compared to what he gave me, the pistol." The CI gave Weigant the handgun as a "setup." Weigant testified that the CI had requested that Weigant carry the handgun on his person, but Weigant refused. Although he agreed to remove the handgun from the CI's vehicle, Weigant testified that the CI placed the handgun in a briefcase containing Weigant's belongings.

After hearing the testimony of Detective Price and Weigant, the district court found that Weigant "did possess three or more firearms" and overruled his objection. With certain exceptions not relevant to this appeal, the district court accepted "the other factual statements and guideline applications in the presentence report as its findings of fact." Based on a total offense level of 19 and a criminal history category of VI, the district court calculated the advisory guidelines range as 63 to 78 months' imprisonment. Following Weigant's

allocution and argument in mitigation, the district court sentenced Weigant to 78 months' imprisonment. After the pronouncement of sentence, Weigant raised no new objection "[o]ther than those previously stated."

## II. STANDARD OF REVIEW

We review for clear error the district court's findings of fact. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005). A factual finding is clearly erroneous only if we are "left with a definite and firm conviction that a mistake has been committed." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted).

If a defendant fails to raise his allegation of sentencing error before the district court, we review the issue only for plain error. United States v. Dudley, 463 F.3d 1221, 1227 (11th Cir. 2006). "Under plain error review, there must be (1) an error, (2) that is plain, and (3) affects substantial rights. When these three factors are met, we may exercise discretion and correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id. (citation omitted).

## III. DISCUSSION

On appeal, Weigant argues that the district court clearly erred in finding that he possessed between three and seven firearms and in applying a two-level

8

increase under U.S.S.G. § 2K2.1(b)(1).

## A. Absence of Explicit Findings on Reliability and Credibility

For the first time on appeal, Weigant argues that the district court erred by failing to make explicit findings of reliability and credibility regarding the hearsay testimony. We thus review this issue only for plain error.

In resolving disputes over facts necessary to establish a sentencing range, the district court may consider any "information [that] has sufficient indicia of reliability to support its probable accuracy," regardless of the rules of evidence applicable at trial. U.S.S.G. § 6A1.3(a). Hearsay may be admitted at sentencing if there are "sufficient indicia of reliability, the [district] court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." United States v. Zlatogur, 271 F.3d 1025, 1031 (11th Cir. 2001) (quotation marks omitted). "[T]he focus is upon the question of [the hearsay's] reliability, which must be determined on a case by case basis." United States v. Lee, 68 F.3d 1267, 1275 (11th Cir.1995). "While it may be advisable and in some instances necessary for a district court to make distinct findings regarding the reliability of hearsay statements used at sentencing, the absence of such findings does not necessarily require reversal or remand where the reliability of the statements is apparent from the record." United States v. Gordon, 231 F.3d 750,

761 (11th Cir. 2000).

Because the hearsay statements by the CI were supported by sufficient indicia of reliability and Weigant had an opportunity to rebut those statements, we conclude that the district court did not plainly err by relying on the hearsay statements. Detective Price testified that the CI had been truthful and reliable, and the CI's statements were verified when the officers found the handgun under the passenger seat of the CI's car.

Moreover, we conclude that the district court implicitly found that the statements by the CI were more credible than Weigant's testimony and that this finding is apparent from the record. Indeed, this credibility finding is supported by the fact that the CI's testimony was internally consistent and Weigant's was not – Weigant testified both that the CI gave him the baby Glock and that he was trying to sell the rifle to the CI. Although Weigant explained this inconsistency by distinguishing between the types of firearms, the district court was free to reject this explanation. In sum, the district court's credibility finding is apparent from the record, and in any event, the asserted error in failing to make explicit findings did not affect Weigant's substantial rights.

## B. Sufficiency of the Evidence to Support the Enhancement

In determining the offense level of a defendant convicted of unlawful

possession of a firearm, the Guidelines provide for a two-level increase if the offense involved between three and seven firearms. U.S.S.G. § 2K2.1(b)(1)(A). Because Weigant disputed the fact that he possessed three or more firearms, the government had the burden to prove the disputed fact by a preponderance of the evidence. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). "The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." Id. (quotation marks omitted).

As described above, the district court did not plainly err in considering the CI's hearsay statement that he saw Wiegant with three firearms. The CI's credibility was bolstered by his history of providing truthful and relevant information to Detective Price. Additionally, the government introduced the photograph in which Wiegant posed with (and offered to sell) a fourth firearm. Although Wiegant testified that he possessed only one firearm and challenged the credibility of the hearsay statement by eliciting Detective Price's concession that the CI used drugs, the resolution of a "swearing match of witnesses . . . will almost never be clear error." Rodriguez, 398 F.3d at 1296. Given the evidence presented, the district court did not clearly err in finding that Wiegant possessed

11

between three and seven firearms.

**AFFIRMED.**[2]

---

[2]Weigant's request for oral argument is DENIED.