UNITED STATES of America,
Plaintiff-Appellee,

v.

Maria RIOLA, Horacio Pedro Gil,
Catherine Contreras,
Defendants-Appellants.

No. 81–5489.

United States Court of Appeals,
Eleventh Circuit.

Jan. 3, 1983.

Certiorari Denied April 4, 1983.
See 103 S.Ct. 1532.

William A. Meadows, Jr., Miami, Fla., Mark Hektner, Miami, Fla., for Riola.

R. Jerome Sanford, Miami, Fla., for Contreras.

Jill D. Touby, Miami, Fla., Court-Appointed, for Pedro Gil.

Glenn Bruce Kritzer, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and ALLGOOD *, District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

In this case, a jury convicted three defendants of conspiracy to distribute cocaine, possession with intent to distribute cocaine, and distribution of cocaine under 21 U.S. C.A. §§ 841(a)(1), 846 and 18 U.S.C.A. § 2 (West 1976). The defendants' appeal consists of several claims: (1) the district court erred in denying defendants' motion for severance; (2) in cross-examination and closing argument, the prosecutor impermissibly commented on defendant Catherine Contreras's post-arrest silence; (3) the district court improperly instructed the jury on entrapment; and (4) the evidence was insufficient to support defendant Maria Riola's conviction. We reject each of these claims and affirm.

I

We turn first to defendants' severance argument under Fed.R.Crim.P. 14.[1] The defendants do not dispute their possession of cocaine and their intent to distribute it on October 16, 1981. Instead, two defendants, Catherine Contreras and her mother Maria Riola, contend that they were coerced into selling the cocaine. The third defendant, Horacio Pedro Gil, argues that he was entrapped by a confidential government informant. All three defendants argue that Gil should have been tried separately from Riola and Contreras because Gil's entrapment defense is inconsistent with the Riola/Contreras coercion defense. Riola also claims that she was prejudiced by references to Gil at trial.

A summary of the Riola/Contreras defense is as follows. According to Contreras, the cocaine was left in a suitcase in her home by her former boyfriend, Raul Menendez. From September 22 to October 16, 1980, Menendez repeatedly telephoned Contreras from New York. At first, he told her to bring the suitcase to New York or to find a man named Joe who would take care of it. Then in late September, Menendez told Contreras for the first time that the suitcase contained cocaine, and he asked her to sell it. Contreras testified that Menendez threatened to do something to her son if she failed to find Joe or sell the cocaine.[2] Sometime in late September or early October, Contreras told her mother, Maria Riola, about the entire Menendez problem. Riola testified that on October 15 the third defendant, Horacio Pedro Gil, stopped by Riola's home. Riola had known Gil, a door-to-door salesman, for four years. She told him about her daughter's problem, and, according to Riola, Gil offered to solve it for them.

By contrast, the Gil defense suggests that he became involved in this sale of cocaine through a confidential government infor-

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Rule 14 states that "[i]f it appears that a defendant ... is prejudiced by a joinder ... of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

2. At this point, Contreras had several options, but each appeared undesirable to her. First, Contreras could have brought the suitcase to New York. However, she did not want to go to New York and leave her son in Florida, because there was no safe place for him to stay. While she could have left her son with her mother, Contreras was concerned about leaving him there because her mentally ill brother also lived with her mother. On the other hand, Contreras did not want to take her son with her to New York because he has bronchial asthma and she thought that New York was cold at that time. Second, Contreras might have shipped the suitcase to New York to Menendez. But, Contreras had testified, Menendez had told her to bring the suitcase to him. Third, Contreras had the option of finding Joe, but there was no answer whenever she called his telephone number. Fourth, Contreras might have informed the police about Menendez. In fact, she told the police that she was receiving threatening phone calls. Contreras said that the police offered to monitor incoming calls but that they could not protect her and her son by parking a police car in front of her house. She did not inform the police that these calls concerned cocaine. The fifth alternative was to sell the cocaine.

mant, Raphael O'Reilly Pesos, known as O'Reilly. Gil testified that, in August, he had asked O'Reilly to lend him $2,000. In October, O'Reilly finally offered to loan Gil $2,000 in return for a favor. Gil agreed. As it turned out, the favor consisted of picking up a sample of cocaine from Riola's house and delivering it to the Airliner Motel. At that time, Gil says, he did not know that the sample was cocaine. In any event, Gil delivered the sample to the Airliner Motel. Waiting with O'Reilly were two prospective customers, agents Johnson and O'Leary of the Drug Enforcement Administration ("DEA"). O'Leary tested the sample. According to Agent Johnson, Gil negotiated the price. Gil says that he never discussed the price of cocaine. Both agents accompanied Gil to Riola's house. Posing as Johnson's money man, DEA Agent O'Connor arrived at Riola's house shortly thereafter, and the agents arrested Contreras, Riola, and Gil.

■ As a general rule, the district court has discretion to grant or deny a Rule 14 motion for severance of defendants, and the district court's judgment will not be overturned in the absence of an abuse of that discretion. *United States v. Butera,* 677 F.2d 1376, 1385 (11th Cir.1982); *United States v. Nickerson,* 669 F.2d 1016, 1022 (5th Cir.1982); *United States v. Berkowitz,* 662 F.2d 1127, 1132 (5th Cir.1981); *United States v. Crawford,* 581 F.2d 489, 491 (5th Cir.1978); *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978). A district court's refusal to grant a severance will not be reversed upon a mere showing of some antagonism and prejudice. An "appellant must demonstrate that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *United States v. Berkowitz,* 662 F.2d at 1132.[3] "[T]o compel severance the defenses must be more than merely antagonistic—

they must be antagonistic to the point of being mutually exclusive ... or irreconcilable." *United States v. Berkowitz, id.* at 1133 (collecting cases). Synthesizing prior decisions, *Berkowitz* formulated the following standard:

> [T]he defense of a defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.... Ultimately, the test is whether the defendant received a fair trial.

*United States v. Berkowitz,* 662 F.2d at 1134.

■ Regarding the Riola/Contreras severance claim, Riola and Contreras suggest that their coercion defense was irreconcilable with Gil's entrapment defense. In applying the *Berkowitz* test, however, we find that Gil's testimony did not undermine the core of the coercion defense. Riola and Contreras seem to suggest that Gil's entrapment claim conflicts with Riola's statement that Gil visited her on October 15 and offered to solve the problem. But the jury could have believed that Menendez coerced Riola and Contreras even if Gil became involved through O'Reilly and not Riola. Contreras also suggests that Gil's proposed testimony indicated that O'Reilly knew about previous narcotics involvement by Contreras and Riola. After carefully reviewing Gil's actual testimony at trial, however, we have failed to uncover any statement by Gil to that effect. Gil did testify that O'Reilly sent Gil to Riola's address, and this might be said to imply that Riola and Contreras participated in earlier narcotics sales. However, this implication is sufficiently attenuated that it does not warrant severance. Overall, none of these minor inconsistencies rise to the level of antago-

---

**3.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prich-* *ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

nism necessary to require severance. *See United States v. Berkowitz,* 662 F.2d at 1134 ("Such compelling prejudice does not arise with respect to a defendant where the conflict concerns only minor or peripheral matters which are not at the core of his defense.")[4]

■ With respect to Gil's severance claim, we hold that Gil's entrapment defense did not reach such a level of antagonism with the testimony offered by Riola and Contreras so as to require severance. While Riola testified that Gil had previously indicated an interest in narcotics trafficking, this testimony was brought out by Gil's counsel when he cross-examined Riola. Gil's counsel thereby invited any possible error. Also, testimony by Gil's own witness, O'Reilly, substantially impaired Gil's entrapment defense. In view of O'Reilly's damaging testimony, we have determined that Gil did not suffer prejudice from Riola's testimony that would compel severance.

We therefore reject the defendants' severance claims.

## II

We also reject the three remaining claims: that the prosecutor, in cross-examination and closing argument, impermissibly commented on Contreras's post-arrest silence, that the district court improperly instructed the jury on entrapment, and that the evidence was insufficient to support Riola's conviction. Of these, only the post-arrest silence issue deserves any discussion. Contreras claims that the prosecutor used, for impeachment purposes, her post-arrest silence in the following exchange with her:

Q: Until today, have you ever told any agent of the Drug Enforcement Administration this story about Mr. Menendez, the drug dealer?

A. No, sir.

Q. Until today, did you ever tell any law enforcement officer about Mr. Menendez, the drug dealer?

A. No, sir.

Record, vol. 2, at 328. Contreras also claims that the prosecutor, in his closing argument, commented on her post-arrest silence.

■ Neither the cross-examination questions nor the closing argument violated Contreras's rights guaranteed by *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The questions, considered in context, were directed to Contreras's failure to notify the authorities before her arrest. Impeachment through prearrest silence does not violate defendant's constitutional rights. *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980). As for the closing argument, the prosecutor did not even refer to Contreras's silence, but rather to Menendez's failure to tell Contreras that he had left cocaine in the suitcase. Record, vol. 3, at 495. In any event, Contreras has not satisfied the governing standard, that a prosecutor impermissibly comments on a defendant's silence either when the prosecutor manifestly intended to comment upon the defendant's failure to testify or when the jury would naturally and necessarily take the comment to refer to defendant's failure to testify. *E.g., United States v. Hartley,* 678 F.2d 961, 983 (11th Cir.1982); *United States v. Jones,* 648 F.2d 215, 218 (5th Cir.1981); *United States v. Corral-Martinez,* 592 F.2d 263, 269 (5th Cir.1979); *Samuels v. United States,* 398 F.2d 964, 968 (5th Cir.1968), *cert. denied,* 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

AFFIRMED.

---

4. Riola also says that she was prejudiced by three distinct references at trial to Gil's general narcotics involvement. We hold that Riola fails to evidence compelling prejudice as required by this court's governing standards. *United States v. Marszalkowski,* 669 F.2d 655, 660 (11th Cir.1982); *Peterson v. United States,* 344 F.2d 419, 422 (5th Cir.1965).