[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14466
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00272-CAR-CHW


WILLIE FRANK WRIGHT, JR.,

Plaintiff - Appellant,

versus

OFFICER LANGFORD, et al.,

Defendants – Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 2, 2014)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Willie Frank Wright, Jr., a state prisoner proceeding *pro se*, appeals from the district court's order granting Officer Edward Langford's motion for summary judgment and dismissing Mr. Wright's excessive force claim for failure to exhaust available administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Mr. Wright also appeals the denial of his motions for appointment of counsel and several rulings made by the district court with respect to his deliberate-indifference claim against Dr. Theron Harrison, including the court's grant of judgment as a matter of law in favor of Dr. Harrison following trial.  After reviewing the record and the parties' briefs, we affirm.

## I

Mr. Wright filed suit under 42 U.S.C. § 1983, asserting claims for excessive force against Officer Langford and for deliberate-indifference to a serious medical need against Dr. Harrison and Nurse Jamey Hargroven, based on a series of incidents that occurred at the Baldwin County jail in Georgia.[1]  Mr. Wright alleged that on May 6, 2010, he sustained a fractured wrist when Officer Langford, a corrections officer at the jail, used excessive force to handcuff him after an altercation with another inmate.  He further alleged that, although Nurse Hargroven examined him after the altercation and he received an x-ray the following day, he

---

[1] During the initial screening of Mr. Wright's complaint pursuant to 28 U.S.C. § 1915A(a), the district court dismissed the claims against Nurse Hargroven.  Mr. Wright does not challenge this issue on appeal.

2

had to wait five days—until May 11, 2010—to see Dr. Harrison, an independently contracted physician who visited the jail twice a week. In addition to taking issue with Dr. Harrison's delay in providing treatment, Mr. Wright also alleged that he was not given certain pain medication for his wrist injury.

## A

On May 12, 2010, before filing this action, Mr. Wright submitted a grievance form related to the May 6th incident where he asserted, in pertinent part, "[m]y hand is fractured your officer handcuffed me behind my back," and complained that he did not see a doctor until five days after the "fight." D.E. 26-1 at 8. At the close of discovery, Officer Langford moved for summary judgment, arguing that the excessive force claim should be dismissed under the PLRA because Mr. Wright failed to comply with the jail's five-day grievance filing period, and thus, did not properly exhaust his administrative remedies before bringing suit. The district court granted Officer Langford's motion and dismissed Mr. Wright's excessive force claim for failure to properly exhaust administrative remedies under the PLRA. Relying on Mr. Wright's admission that he had filed numerous prior grievances, court records showing that he had filed nine prior lawsuits in federal court, and a jail official's affidavit stating that all Baldwin County inmates are issued a copy of the Inmate Handbook which explains the grievance filing procedure, the district court determined that Mr. Wright's asserted

3

lack of awareness concerning the five-day grievance deadline was not credible. And, although Mr. Wright claimed that his injury prevented him from timely completing the grievance form, the district court determined that Mr. Wright had failed to show that he could not seek assistance from another inmate or staff member.[2] Alternatively, the district court found that Mr. Wright also failed to follow the jail's grievance procedures, as he did not specifically identify Officer Langford or the offending conduct in his grievance form.

During the course of litigation, Mr. Wright moved twice for appointment of counsel—once before Officer Langford filed his motion for summary judgment, and again after the motion was filed, but before the district court granted the motion. The magistrate judge denied both motions for appointment of counsel because Mr. Wright had adequately set forth the allegations underlying his claims against Officer Langford and Dr. Harrison, and that the applicable legal doctrines were readily apparent. In the order denying Mr. Wright's second motion, the magistrate judge explained that the court, *sua sponte*, would appoint counsel if it became apparent that Mr. Wright required legal assistance or in order to avoid prejudice to his rights.

---

[2] On appeal, Mr. Wright has not argued that he was unable to complete the grievance form in a timely manner due to his injury. Thus, he has abandoned this argument. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (citation omitted).

4

**B**

In August 2012, the case against Dr. Harrison proceeded to trial. Mr. Wright, Nurse Hargroven, and Dr. Harrison testified.

Nurse Hargroven testified that she physically examined Mr. Wright on May 6, 2010, following an altercation with another inmate.[3] *See* D.E. 98 at 49-50. She observed swelling in Mr. Wright's hand, but no deformities. *See id.* at 51. Following the exam, she reported her observations by phone to Dr. Harrison, who instructed her to schedule an x-ray when the mobile clinic next visited the jail— that is, five days later—and to issue him prescription-strength Motrin for pain relief. *See id.* at 50, 59-62. Nurse Hargroven decided to schedule the x-ray for the following day at an off-site hospital because Mr. Wright had been very vocal about his medical complaints. *See id.* at 62. She clarified, though, that her decision was made solely to appease Mr. Wright, and not because she believed that his condition necessitated more immediate treatment. *See id.* at 63. Nurse Hargroven did not inform Dr. Harrison of the scheduling change. *See id.* at 63-64.

Dr. Harrison testified that Nurse Hargroven contacted him at his personal office on May 6, 2010 after she had examined Mr. Wright. *See id.* at 82-83. She reported that Mr. Wright's hand was swollen but that she did not observe anything "critical." *Id.* at 83. Based solely on Nurse Hargroven's report, Dr. Harrison

---

[3] It appears that Nurse Hargroven may have changed her name sometime before trial commenced, as she is referred to as "Smith" throughout the proceeding.

prescribed 800 milligrams of Motrin for Mr. Wright and decided to be "overly cautious" and order an x-ray for the following week. *Id.* When he visited the jail the following week and personally examined Mr. Wright, he was surprised to learn that Mr. Wright had undergone an x-ray several days earlier. *See id.* at 87-88, 154.

Mr. Wright testified that he was immediately taken for a medical examination when he complained of pain following the altercation on May 6, 2010. *See id.* at 117. He explained that, after Nurse Hargroven first examined him, he was housed in an isolation unit until he met with Dr. Harrison five days later, on May 11, 2010. *See id.* at 121-22. He admitted that he was not forced to do any work or exercise in the interim. *See id.* at 122. Mr. Wright stated that he was offered prescription pain medication twice daily during the period. *See id.* at 124. While in isolation, on May 9, 2010, he completed a medical form reporting that he was coughing blood and experiencing bloody stool, although he did not refer to his wrist injury at that time. *See id.* at 126-27. He first met with Dr. Harrison regarding his injury on May 11, 2010, and following an examination, Dr. Harrison scheduled Mr. Wright to meet with an orthopedist the following day. *See id.* at 127.

After the parties rested their cases, Dr. Harrison moved for judgment as a matter of law under Fed. R. Civ. P. 50(a)(2). The district court engaged in a colloquy with Mr. Wright, explaining the meaning of a Rule 50 motion, and gave

Mr. Wright an opportunity to respond.  The district court also confirmed with Mr. Wright that his deliberate indifference claims against Dr. Harrison were two-fold: (1) Dr. Harrison was deliberately indifferent to Mr. Wright's serious medical needs in that he failed to do anything about Mr. Wright's wrist between the day that he ordered the x-ray and five days later when he examined Mr. Wright; and (2) Dr. Harrison should have prescribed Lortab or something stronger than Motrin for Mr. Wright's wrist pain.  *See* D.E. 98 at 166-67.

The district court granted the Rule 50 motion, explaining that Mr. Wright had not presented sufficient evidence for the jury to conclude "that there [was] a basis for them to believe that [Dr. Harrison] was deliberately indifferent to [his] medical needs."  *Id.* at 174.  Specifically, regarding Mr. Wright's allegation of a deliberate delay in treatment, the jury could not conclude that Dr. Harrison was liable because the uncontested evidence showed that Nurse Hargroven altered the x-ray date to appease Mr. Wright without notice to Dr. Harrison, who did not learn of the x-ray and wrist fracture until he met with Mr. Wright five days later. Furthermore, the district court held that Mr. Wright did not have a constitutional claim against Dr. Harrison for prescribing a pain medication of his choice, as opposed to the medication Mr. Wright wanted.

## II

We begin by addressing Officer Langford's argument that we lack jurisdiction over Mr. Wright's challenge to the March 29, 2012 summary judgment ruling in his favor. We do not agree. Generally, this Court has jurisdiction over "appeals from final decisions of the district courts." *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (citing 28 U.S.C. § 1291). "A final decision is typically one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *Id.* (citation and internal quotation marks omitted). Of particular importance here, "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2).

Mr. Wright filed the notice of appeal on the claims against Dr. Harrison and Officer Langford on August 28, 2012, the same day final judgment was entered in favor of Dr. Harrison—ending the litigation on the merits and leaving nothing for the court to do but execute judgment in favor of Officer Langford and Nurse Hargroven, which was done on October 5, 2012. In accordance with Rule 4(a)(2), we treat the notice of appeal with respect to Officer Langford as if it had been filed on October 5, 2012. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 n.6 (11th Cir. 2010). As such, we reach the merits of Mr.

8

Wright's appeal as to the claim against Officer Langford.  *See also Kirkland v. Nat'l Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (appeal from "final judgment . . . brings up for review [all] preceding nonfinal order[s]").

### III

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies, the PLRA requires that an inmate comply with relevant prison grievance procedures, including procedural deadlines.  *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006) (concluding that the PLRA exhaustion requirement requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules").

"[E]xhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, [thus] an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if, [as applicable here, it was] raised in

9

a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citation and internal quotation marks omitted).

Deciding whether an inmate exhausted administrative remedies entails a two-step process. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion . . . and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking the plaintiff's facts as true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *See id.* "If the complaint is not subject to dismissal at the first step[,] . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *See id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the [plaintiff] has exhausted his available administrative remedies." *Id.* at 1083.

We review *de novo* a district court's dismissal of a lawsuit for failure to exhaust administrative remedies under the PLRA. *See Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). The district court's underlying findings of fact, however, are reviewed only for clear error. *See Bryant*, 530 F.3d at 1377. "For a factual finding to be clearly erroneous, this court, after reviewing all of the

10

evidence, must be left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

Turning to this case, the district court did not err in granting Officer Langford's motion for summary judgment and dismissing Mr. Wright's excessive force claim for failure to exhaust administrative remedies. There is no dispute that Mr. Wright did not timely file a grievance regarding Officer Langford's purported actions. Mr. Wright's appeal, however, takes issue with the district court's conclusion that he was on notice of, and thereby bound by, the five-day grievance filing period.[4]

Mr. Wright argues that he never received the Inmate Handbook, and thus, was not aware of the jail's five-day filing period. But, it was reasonable for the district court to find that Mr. Wright's purported ignorance of the five-day grievance filing period was not credible, given Mr. Wright's significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each Baldwin County inmate is given a copy of the

---

[4] For the first time on appeal, Mr. Wright argues that he did not have a grievance form, pen, or pencil between May 6, 2010, and May 12, 2010, and thus, could not complete and file a timely grievance. We do not consider arguments raised for the first time on appeal. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. But, issues not raised below are normally deemed waived."). *See also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]s a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions—particularly fact-bound issues—that district[] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.").

11

Inmate Handbook spelling out the grievance procedure.  *Cf. Bryant*, 530 F.3d at 1377-78 (affirming, as reasonable, the district court's determination that the plaintiff's allegation that he was denied access to grievance forms was not credible, given unrebutted evidence that the plaintiff had previously filed a grievance).  As such, the district court did not clearly err in finding that Mr. Wright did not timely file a grievance form and thus, did not properly exhaust his administrative remedies under the PLRA.

As an additional point, the district court also concluded that, even if Mr. Wright's grievance had been timely, it was still defective because it did not mention Officer Langford's name, which was admittedly known to Mr. Wright at the time, or include any allegation that Officer Langford handcuffed him too tightly or jerked him up on the handcuffs.[5]  Mr. Wright contends that jail officials never informed him that the grievance form he submitted on May 12, 2010 was untimely or that it failed to give enough information for the jail to have notice of his claim.  As stated in the Inmate Handbook, though, Baldwin County's grievance process requires inmates to "fully state the time, date, names of . . . staff and

---

[5] Mr. Wright argued below that he filed a grievance with specific facts regarding Officer Langford's behavior and that the grievance form was "suppressed" by jail officials.  The district court concluded that this assertion lacked credibility.  Mr. Wright does not raise this argument on appeal, except for a passing reference in his "Partial Brief": "the other grievance I filed was suppressed."  A passing reference to an issue, however, without "elaborat[ion] [of] arguments on the merits" constitutes abandonment.  *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).  *See also Timson*, 518 F.3d at 874.

inmates involved, names of witnesses, and a narrative of the incident." D.E. 26-1 at 5.

Mr. Wright does not explain why his grievance form failed to include the required information. Accordingly, the district court did not err in concluding that Mr. Wright failed to properly exhaust his administrative remedies on the alternative ground that he failed to follow the procedural rules governing the information that must be included on the grievance form. *See Woodford*, 548 U.S. at 90-93.

**IV**

Mr. Wright argues on appeal that the district court abused its discretion in denying his motions for appointment of counsel. We review the denial of a motion to appoint counsel for abuse of discretion. *See Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999).

Appointment of counsel in a civil case is not a constitutional right. *See Bass*, 170 F.3d at 1320. Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances. *See id.* In this case, the facts underlying Mr. Wright's claims were not complicated or unusual, nor was the law governing the claims novel or complex. There were no exceptional circumstances that would require the appointment of counsel. Mr.

13

Wright, like any other *pro se* litigant, would likely have benefited from the assistance of a lawyer, but his deliberate-indifference and excessive force claims were not so unusual that the district court abused its discretion by refusing to appoint counsel. *See Bass*, 170 F.3d at 1320.

## V

With respect to the claims against Dr. Harrison, Mr. Wright raises several issues, namely that the district court (1) abused its discretion in denying his requests to subpoena witnesses; (2) abused its discretion in admitting Nurse Hargroven's testimony during trial; and (3) erred in granting Dr. Harrison's Rule 50 motion for judgment as a matter of law. Several standards of review govern Mr. Wright's challenges. The district court's denial of Mr. Wright's witness subpoena requests is reviewed for abuse of discretion. *See United States v. Lee*, 68 F.3d 1267, 1272 (11th Cir. 1995). Mr. Wright's claim that Dr. Harrison deliberately withheld pretrial notice of Nurse Hargroven's trial testimony, which implicitly attacks the district court's admission of that testimony, challenges an evidentiary ruling, which is also reviewed for abuse of discretion. *See Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004). "An abuse of discretion constitutes reversible error only if it prejudices the substantial rights of a defendant." *Lee*, 68 F.3d at 1272. Finally, we review a district court's ruling on a motion for judgment as a matter of law *de novo*, applying the same

14

standards used by the district court.  *See Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000).

## A

Mr. Wright has failed to show an abuse of discretion with respect to the district court's denial of his subpoena requests.  Mr. Wright sought to subpoena several prison guards who transported him to have his wrist x-rayed, along with the individuals who administered the x-ray, in order to impeach Dr. Harrison's testimony that he did not know that Mr. Wright received the x-ray on May 7th. But, Mr. Wright neither identified any of these individuals, nor related in detail the contents of their expected testimony.  Specifically, as the district court pointed out in denying the subpoena requests, Mr. Wright provided no indication that any of these individuals had actually communicated with Dr. Harrison or would otherwise know when he was provided with the x-ray results.  As such, the district court did not abuse its discretion in denying Mr. Wright's subpoena requests.  *Cf. Lloyd v. McKendree*, 749 F.2d 705, 707 (11th Cir. 1985) (holding that, because the power to subpoena witnesses for an indigent civil litigant is discretionary, "the district court did not abuse its discretion when it denied [a civil rights litigant's] . . . subpoena request" where the litigant had not tendered the fee for the witness).

15

**B**

Mr. Wright claims that Dr. Harrison improperly withheld pretrial notice of the details of the trial testimony of Nurse Hargroven with respect to her decision to move up the date on which Mr. Wright was scheduled to receive the x-ray on his wrist. During discovery, a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information. . . ." Fed. R. Civ. P. 26(a)(l)(A)(i). With respect to expert witnesses, a party must also disclose anticipated testimony, but this additional requirement does not extend to lay witnesses. *Compare* Fed. R. Civ. P. 26(a)(2), *with* Fed. R. Civ. P. 26(a)(3). Furthermore, when a party brings out testimony at trial, that party is deemed to have invited any error related to that testimony. *See United States v. Riola*, 694 F.2d 670, 673 (11th Cir. 1983) ("[T]his testimony was brought out by Gil's counsel when he cross-examined Riola. Gil's counsel thereby invited any possible error."). "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1340 n.5 (11th Cir. 2003).

The district court's admission of Nurse Hargroven's testimony is arguably invited error, and not subject to review, as Mr. Wright called Nurse Hargroven to the stand and brought out the contested testimony. *See Riola*, 694 F.2d at 673;

16

*Birmingham Steel Corp.*, 353 F.3d at 1341 n.5.  But, even if Mr. Wright did not invite the contested testimony, Dr. Harrison had no obligation, as Mr. Wright contends, to disclose the details of Nurse Hargroven's testimony before trial as she was merely a lay witness.  *See* Fed. R. Civ. P. 26(a)(l)(A)(i), (a)(2), (a)(3).  Therefore, the district court did not abuse its discretion in admitting Nurse Hargroven's testimony at trial.

## C

Finally, the district court did not err in granting Dr. Harrison's Rule 50 motion for judgment as a matter of law.  In evaluating a defendant's motion for judgment as a matter of law, "we consider all of the evidence in a light most favorable to the plaintiff and grant the plaintiff the benefit of all reasonable inferences."  *Slicker*, 215 F.3d at 1229.  "We may affirm a judgment as a matter of law only if the facts and inferences point so overwhelmingly in favor of the movant that reasonable people could not arrive at a contrary verdict."  *Id.*

A prison official violates the Eighth Amendment when he acts with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail on a deliberate-indifference claim, a plaintiff must show that he had an objectively serious medical need and that the defendant acted with deliberate indifference to that need.  *See Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir.

17

2008). We have defined a "serious medical need as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* To establish deliberate indifference, a plaintiff must show that the defendant had: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.* (citation and internal quotation marks omitted). No liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not. *See id.* at 1331 (citation and internal quotation marks omitted). Thus, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.*

Viewing the evidence in a light most favorable to Mr. Wright, Dr. Harrison knew that Nurse Hargroven examined Mr. Wright and found minimal swelling in his hand and no deformities. In response, Dr. Harrison prescribed 800 milligrams of Motrin—a prescription pain reliever—and ordered an x-ray to be taken the next time the mobile x-ray equipment visited the jail—five days later. The evidence presented at trial further showed that Nurse Hargroven unilaterally rescheduled the x-ray for the next day in order to appease Mr. Wright, although she clarified that it was not because of the severity of his injury, and she did so without notifying Dr. Harrison.

18

Mr. Wright failed to present any evidence to suggest that Dr. Harrison was aware that he had a wrist fracture and needed medical attention when Nurse Hargroven examined him, nor when she moved up his x-ray appointment. Instead, the evidence showed that it was only when Dr. Harrison examined Mr. Wright for the first time the following week that he learned the x-ray had been taken days earlier and that Mr. Wright's wrist was fractured. And, according to Mr. Wright's own testimony, Dr. Harrison then sent him to a specialist for treatment the next day.

On this evidence, a jury could not reasonably conclude that, based on the information known to Dr. Harrison at the pertinent time, he deliberately ignored a serious medical condition that was obvious or known to him. *See Burnette*, 533 F.3d at 1331-33 (finding that defendants did not deliberately ignore a serious medical condition that was obvious or known to them because none of them knew or suspected that plaintiff had ingested Duragesic patches or a potentially lethal combination of drugs). Additionally, Mr. Wright's claim that he should have received some other form of pain medication, instead of prescription-strength Motrin, does not state an Eighth Amendment deliberate indifference claim because a doctor's choice of treatment is generally (and was here) a matter of medical judgment. *See Estelle*, 429 U.S. at 107.

19

## VI

For the foregoing reasons, we affirm the district court's grant of Officer Langford's motion for summary judgment and dismissal of Mr. Wright's excessive force claim for failure to properly exhaust available administrative remedies under the PLRA.  We also affirm the district court's (1) denial of Mr. Wright's motions for appointment of counsel; (2) denial of Mr. Wright's requests to subpoena witnesses; (3) admission of Nurse Hargroven's testimony during trial; and 4) grant of Dr. Harrison's Rule 50 motion for judgment as a matter of law.

**AFFIRMED.**