[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11823

_____

D.C. Docket No. 3:17-cr-00074-RV-8

UNITED STATES OF AMERICA,

                                                    Plaintiff - Appellee,

versus

STEVEN RYAN MICHAEL SHOLLY,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 27, 2019)

Before MARTIN, ROSENBAUM, and BOGGS,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Appellant Steven Sholly pled guilty to participating in a marijuana-distribution conspiracy. *See* 21 U.S.C. § 841(a)(1). At sentencing, a government witness testified that one of Sholly's coconspirators had told him that Sholly had received weekly shipments of six pounds of marijuana each between 2013 and April 2015, which amounted to over 100 kilograms of marijuana over the course of the conspiracy. Based in part on that hearsay evidence, the district court sentenced Sholly to 59 months in prison.

On appeal, Sholly argues, as he did before the district court, that the district court clearly erred when it relied on his coconspirator's hearsay statement and that the court's conclusion that he possessed over 100 kilograms of marijuana was speculative. After careful review, we vacate his sentence and remand his case to the district court for resentencing.

## I.

## A.

As part of an investigation into a marijuana-distribution conspiracy, agents of the Drug Enforcement Administration ("DEA") came to believe that Charles Sindylek was shipping marijuana from California to Sholly and others in Florida for distribution. In March and April 2015, agents made three "trash pulls" at Sholly's house and discovered "an empty FedEx box, numerous empty heat-sealed plastic bags containing marijuana residue and smelling of marijuana, plus numerous dryer

2

sheets."  Agents obtained a search warrant for Sholly's house and executed it on April 28, 2015.  In Sholly's house, they found the following:

> numerous empty heat-sealed plastic bags containing marijuana residue and smelling of marijuana; three dog beds; an empty cardboard box shipped via FedEx and addressed to Lauren Rector; plastic baggies; plastic wrap; gloves; a scale; various types of smoking devices; approximately 1.282 total kilograms of marijuana; and a safe in Sholly's bedroom that contained $18,683 in cash; Sholly's wallet; approximately 49.9 grams of cocaine; and a .45-caliber Hi-Point pistol.

Sholly confirmed that those items belonged to him.  Then he "immediately agreed to cooperate with the DEA" and said that Sindylek had moved to California about six months before and shipped marijuana to him, Lauren Rector, and Brett Brownell, six pounds at a time, inside of dog beds.

Sindylek spoke with investigators and characterized himself as a "middle man" between the marijuana source and the buyers in Florida, including Sholly. According to Sindylek's statement, the buyer would usually send him a text message with "an address and the desired amount of marijuana," and the source would pack and ship the requested amount to the buyer's specified address.  Sindylek would then coordinate the buyer's payment, which he routed through various friends' bank accounts to avoid drawing too much attention to the scheme.

Sindylek also described to agents Sholly's marijuana orders in particular:

> Sholly's packages of marijuana were usually sent to an address in Pace, Florida, via Fed Ex to his neighbor,

3

> Lauren Rector's residence. Sindylek said Sholly paid $2,400 per pound of marijuana and would get six pounds per package. Sindylek stated Sholly received one package of marijuana per week, t[wo] packages at the most, until law enforcement kicked in his door.

He further told agents that Sholly continued to buy marijuana from another coconspirator after the DEA searched his house.

Agents "analyzed FedEx and UPS records" for packages shipped to addresses "known to be used by defendants to accept packages of marijuana from addresses in California that were multiple pounds in weight." Of the 266 packages that met that criteria, 12 were sent to "addresses controlled by Sholly." And, agents said, "[a]ccording to multiple interviews, these packages contained at least 6 pounds of marijuana each."

On July 18, 2017, a grand jury charged Sholly and seven coconspirators with conspiracy to possess marijuana with the intent to distribute it between January 1, 2014, and June 20, 2017, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Sholly's coconspirators were also charged with money-laundering offenses.

**B.**

On October 4, 2017, Sholly pled guilty to the conspiracy charge. The pre-sentence investigation ("PSI") recounted the agents' investigation into the marijuana-distribution conspiracy, including the trash pulls at Sholly's residence, the results of the search warrant executed there, Sindylek's statement to the agents

about the frequency of Sholly's orders, and the FedEx records of shipments to Sholly. Based on the investigation, the PSI reported that Sholly had received 68 packages containing six pounds of marijuana each, and had possessed 185.06 kilograms of marijuana in total.

That corresponded to a base offense level of 24, since the offense as represented in the PSI involved at least 100 kilograms of marijuana, U.S.S.G. §2D1.1(a)(5). The PSI also recommended a two-level enhancement for Sholly's possession of a firearm, U.S.S.G. § 2D1.1(b)(1), and a two-level reduction for his acceptance of responsibility, U.S.S.G. § 3E1.1(a). In combination with Sholly's criminal-history category of II, the resulting recommended sentencing guidelines range was 57 to 71 months.

Sholly objected to the PSI's calculation of the total weight of marijuana he had possessed. On April 18, 2018, the parties appeared before Judge Vinson to resolve that objection, among others, and for sentencing. As evidence of the weight of drugs attributable to Sholly, the Government presented the testimony of Agent Benjamin Murphy. Murphy described the agents' investigation, including the trash pulls at Sholly's home, the execution of the search warrant there, the FedEx records, and Sindylek's statement to the agents that Sholly had received one six-pound package of marijuana each week, "sometimes two," until April 2015. Murphy conceded that he did not know exactly when Sholly began receiving packages of

marijuana and that he did not have evidence of Sholly's text messages with Sindylek or bank records showing transfers of money in exchange for the shipments.

Defense counsel argued that Sindylek's hearsay statement was not reliable. Counsel pointed out that the shipping records relating to Johnson and other coconspirators closely corroborated the government's estimation of drugs attributable to them. By contrast, counsel argued, the records relating to Sholly did not "mesh" with the Government's estimation of drugs attributable to him. Those records, which the DEA received from FedEx on May 7, 2015, reflected only 12 total shipments, including deliveries on April 3, 17, and 23, 2015, shortly before agents executed the search warrant. Instead, the government based its numbers on Sindylek's "very vague statements" about shipments to Sholly. Defense counsel also pointed to how the government could not pinpoint when the shipments began and said that Sholly had had fewer contacts with Sindylek than the coconspirators had. Counsel asked the court to use the FedEx records alone in calculating the weight of drugs attributable to Sholly.

For the government's part, the prosecutor asked the court to credit Murphy's recitation of Sindylek's hearsay statement and find that Sholly had received weekly shipments of six-pound packages of marijuana between some time in 2013 and continuing until agents executed the search warrant in March 2017. The prosecutor argued that the FedEx records were incomplete because the government did not have

6

all of the addresses associated with Sholly and because FedEx records, which the government received on May 7, 2015, typically included only two years' worth of information.  And, the prosecutor urged, Sindylek's statement was reliable in light of the other evidence of the extent of Sholly's involvement, such as how the agents had found evidence of marijuana distribution in their trash pulls and had found three dog beds, which were used to ship marijuana, in Sholly's house when they executed the search warrant.  That evidence, the prosecutor said, did not "jive" with Sholly's contention that the FedEx records must have been complete.

Judge Vinson overruled Sholly's objection.  He reasoned,

> the [g]overnment's estimate is based upon some assumptions, but I think those assumptions are reasonable in light of all the evidence in this case, particularly since, if you add in the deliveries that took place after April of 2015, you add another, let's just say, 20 pounds or so to that, you've still got—you've still got more than 100 kilograms.  So even if you try to get more precise, then— measuring quantities of drugs is never a precise thing that you can do.  It has to be estimated, and I think the [g]overnment has come up with evidence that it shows by a preponderance of the evidence that that is an accurate estimate.

Applying the Sentencing Guidelines, the district court concluded that Sholly's recommended sentence range was 57-71 months.  After hearing arguments on Sholly's sentence, the court imposed a sentence of 59 months in prison.  In pronouncing Sholly's sentence, the court stated that a different quantity of drugs would have affected its ultimate sentence.

This appeal followed.

## II.

We review for clear error a district court's factual determination of the quantity of drugs attributable to a defendant. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). We will not find clear error unless we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

## III.

Applying our precedent, we must conclude that the government did not meet its burden to prove that Sholly had possessed at least 100 kilograms of marijuana in the course of the conspiracy. Accordingly, we vacate Sholly's sentence and remand his case for resentencing.

To calculate the base offense level for drug distribution, a court must determine "the quantity of illegal drugs properly attributable to" the defendant. *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). "When the amount of the drugs [actually] seized does not reflect the scale of the offense, the district court [instead] must approximate the drug quantity attributable to the defendant." *United States v. Dixon*, 901 F.3d 1322, 1349 (11th Cir. 2018) (citation and quotation marks omitted). The court's approximation "may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period

8

of time." *United States v. Almedina*, 686 F.3d 1312, 1316 (11th Cir. 2012) (citing *Frazier*, 89 F.3d at 1506); *see* U.S.S.G. § 2D1.1 cmt. n.5 (2018).    The court's approximation "'may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative.'"    *Almedina*, 686 F.3d at 1316 (quoting *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)).

When a defendant challenges one of the factual bases of his sentence, the government bears the burden of establishing the disputed fact by a preponderance of the evidence.  *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).  We have explained that that burden must be satisfied with reliable and specific evidence. *Id.*  Moreover, we have emphasized that "[i]t is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence."  *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009) (quotation marks omitted).

In determining whether the government satisfied its burden here, we consider our precedent concerning hearsay evidence.  Under that precedent, a sentencing court may rely on hearsay evidence only if it meets certain requirements.  We have explained that, in general, the evidence must have "sufficient indicia of reliability," the sentencing court must make "explicit findings of fact as to credibility," and the defendant must have "an opportunity to rebut the evidence."  *United States v.*

9

*Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (quotation marks omitted). Nevertheless, where a district court does not make an explicit finding about the reliability of hearsay evidence, "the absence of such findings does not necessarily require reversal or remand where the reliability of the statements is apparent from the record."    *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000). Reliability of hearsay evidence "must be determined on a case by case basis." *United States v. Lee*, 68 F.3d 1267, 1275 (11th Cir. 1995).

In *Lee*, the sentencing court attributed a large amount of drugs to the defendant based on the testimony of a DEA agent, who recounted the statements of the defendant's coconspirator during an interview.  *Lee* 68 F.3d at 1275.  The court did not make an explicit finding about the reliability of the hearsay statement.  *Id.*  On appeal, the government argued that the record contained sufficient indicia of the hearsay statement's reliability because the statement had been against the coconspirator's penal interest.  *Id.* at 1275-76.  We rejected that argument, vacated the defendant's sentence, and remanded his case for resentencing.  *Id.* at 1276.

Here, the district court clearly erred when it relied on Murphy's recitation of Sindylek's hearsay statement without making an explicit finding about the reliability of Sindylek's statement and without its reliability being "apparent from the record." *Gordon*, 231 F.3d at 761.  Also, as in *Lee*, this record does not contain sufficient

10

indicia of the hearsay statement's reliability, so we must vacate Sholly's sentence and remand his case to the district court for resentencing.

In support of the reliability of Sindylek's statement, the government points to several aspects of the investigation that it says corroborate its content. It points to the March and April 2015 trash pulls, during which the DEA found numerous empty heat-sealed plastic bags. It further relies on the April 28, 2015, search of Sholly's home, when agents found three dog beds used to ship marijuana and 1.28 kilograms of the drug. That evidence, the government asserts, in combination with Sholly's admission to agents that he had ordered marijuana from Sindylek as early as six months before the search of his house, corroborated Sindylek's statement that Sholly ordered one six-pound package of marijuana every week. On its own, of course, evidence of Sholly's drug possession at one point in time in 2015 and admission of some prior orders does not corroborate Sindylek's hearsay statement that Sholly received *weekly* shipments of marijuana.

So the government argues that the volume of drugs and evidence of drug shipments found during the investigation as a whole demonstrate that the FedEx records must have been incomplete. The government suggests that complete records would corroborate Sindylek's claim of weekly shipments. But in fact, the FedEx records are perfectly consistent with the volume of drugs and evidence of drug shipment found during the investigation. The FedEx records showed that Sholly

11

received deliveries on March 27, April 3, April 17, and April 23, 2015, among other dates. Those four shipments arrived during the same time frame as the DEA's March and April trash pulls, and occurred shortly before the search of Sholly's home on April 28, 2015, during which agents found three dog beds used to ship marijuana. The volume of drugs and drug-shipment materials found during the search, then, does not contradict the accuracy of the FedEx records: those records reflected three shipments in April 2015, and a search of Sholly's home at the end of that month revealed three empty dog beds (one per shipment) used to ship the drugs. So the volume of drugs and drug-shipment materials do not corroborate Sindylek's hearsay statement alleging shipments in excess of those documented in the FedEx records.

Next, the government contends that the records were incomplete because it believed that it did not know all of Sholly's addresses, so it was unable to request records relating to those other addresses. But the problem for the government is that it bears the burden of proof here, and it identifies no evidence that suggested that Sholly received shipments of marijuana at other addresses, so its argument is purely speculative.

In sum, the reliability of Sindylek's hearsay statement is not apparent on this record, so it was clear error for the district court to rely on it in calculating the weight of marijuana that Sholly possessed during the course of the conspiracy.

12

## IV.

For the foregoing reasons, we **VACATE** Sholly's sentence and **REMAND** his case to the sentencing court for resentencing.

**VACATED AND REMANDED.**